UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| JAMES STUART and CAREDA L. HOOD, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  No. 4:14-cv-04001-SOH ) |
| STATE FARM FIRE & CASUALTY COMPANY, | ) Hon. Susan O. Hickey ) ) |
| Defendant. | ) ) |

### STATE FARM'S RESPONSE TO PLAINTIFFS' MOTION FOR ORDER APPROVING CLASS NOTICE PLAN AND CLASS NOTICE

Defendant State Farm Fire and Casualty Company ("State Farm") hereby submits its response to the Opposed Motion for Order Approving Class Notice Plan and Class Notice (Dkt. 168, the "Motion") filed by Plaintiffs James Stuart and Careda Hood ("Plaintiffs").[1]

### INTRODUCTION

As the parties reported at the recent scheduling conference herein, following the Eighth Circuit's affirmance of the Court's class certification order (Dkt. 142), the parties have conferred regarding class notice and have reached agreement as to most aspects of the form and plan for notice.[2] However, four significant disputes remain.

---

[1] Plaintiffs in their Motion and proposed class notice plan (Dkt. 168-1, the "Proposed Notice Plan" or "Not. Pl.") inaccurately identify two parties in the case caption who are no longer parties to this case – former named plaintiff Jeff Dennington, whose claims were dismissed in March 2016 (Dkt. 110 at 14); and former defendant State Farm General Insurance Company, which the Court dismissed from this case in August 2016 (Dkt. 142 at 15).

[2] By not objecting to most aspects of Plaintiffs' Motion, State Farm does not concede the propriety of class certification here or that any class claims may properly be maintained. As set forth in State Farm's opposition to Plaintiffs' motion for class certification (Dkt. 87), State Farm continues to maintain that, for myriad reasons, no class should be certified in this matter.

First, Plaintiffs' Proposed Notice Plan contemplates an unnecessary, prejudicial, and confusing "banner" advertisement regarding the lawsuit being posted on *State Farm's* own website or on its mobile application. *See* Not. Pl. at 3. Such a banner posting is wholly inappropriate, improperly prejudicial to State Farm and completely unnecessary, particularly in a case like this one involving extensive individualized notice. It is further problematic here given the age of the claims at issue, the changes in substantive Arkansas law (which now expressly *permits* labor depreciation by statute), and the risk of confusion to the many thousands of current State Farm insureds who are not members of Plaintiffs' class. No such insurer website banner ad was a part of the notice plans the Court adopted in the labor depreciation class settlements that it approved.[3] The Court should reject Plaintiffs' website "banner" proposal out of hand.

Second, Plaintiffs' Proposed Notice Plan creates unnecessary hurdles for class members who may desire to opt out of the class. For example, it requires (without justification) that exclusion requests be sent by mail rather than email. Not. Pl. at 4. In addition, it sets an unnecessarily tight opt-out deadline at just 60 days after the notice administrator *begins* mailing and publication notice. *Id.* at 2-5. That is far too abbreviated of a timeline according to guidance from the Federal Judicial Center.[4] The proper opt-out deadline here should be set, at a minimum, at 90 days after mailing begins, and class members should be permitted to opt out by email.

---

[3] *See* Order, *Braden v. Foremost Ins. Co. of Grand Rapids*, No. 4:15-cv-04114-SOH (W.D. Ark. May 21, 2018) (hereinafter, "*Braden*"), ECF No. 113; Order, *Larey v. Allstate Prop. and Cas. Co.*, No. 4:14-cv-04008-SOH (W.D. Ark. Sept. 25, 2017) (hereinafter, "*Larey*"), ECF No. 69; Order, *Green v. Am. Modern Home Ins. Co.*, No. 4:14-cv-04074-SOH (W.D. Ark. Feb. 28, 2017) (hereinafter, "*Green*"), ECF No. 85.

[4] *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010) (hereinafter the "FJC Guide") (available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf).

Third, Plaintiffs' Proposed Notice Plan creates an unnecessary dispute by suggesting a specific format for the class notice list without justification and further proposing that State Farm provide certain data (policy numbers) that is not relevant for class notice *and* which Plaintiffs previously agreed State Farm could omit from the class notice list. State Farm has now collected the agreed upon data and has compiled it into a reasonably usable format. Nothing more is required.

Fourth, Plaintiffs' Proposed Notice Plan is silent as to who should bear the cost of notice. For the avoidance of doubt, the final plan should state that Plaintiffs and their counsel will bear the costs of notice, as is standard in litigated class notice plans like this one where there has been no determination of liability.

For the reasons set forth herein, State Farm respectfully requests that the Court make the aforementioned changes in Plaintiffs' Proposed Notice Plan before it approves that Plan.

## DISCUSSION

### I. Plaintiffs' Website "Banner" Proposal Should Be Rejected.

Rule 23 requires that notice given in 23(b)(3) class actions like this one be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(C). Individual notice is preferred due to the fact that merits rulings ultimately will bind absent class members.[5] Plaintiffs' Proposed

---

[5] As discussed at the recent scheduling conference, any such merits rulings (*e.g.*, partial or full summary judgment rulings as to class claims) must be delayed until after the expiration of the opt-out period in order to safeguard State Farm against so-called "one-way intervention" – *i.e.*, the problem of absent class members deciding whether to opt-out only *after* seeing how the court rules on merits issues. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 547 (1974) (discussing changes made to Rule 23 to address the "unfair" situation of "one-way intervention" for defendants); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (reversing grant of class certification and case management plan providing for merits determinations *prior* to issuance of class notice because, among other things, "one-way intervention is forbidden" under Rule 23(c)(2)); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("The purpose of Rule 23(c)(2)

Notice Plan accordingly contemplates extensive individualized notice: a postcard notice will be mailed to the last-known address provided by State Farm for each of the insureds who made the approximately 16,000 claims potentially falling within the class definition. The notice administrator will update those addresses prior to mailing using the National Change of Address dataset and the LexisNexis name and address trace database; and, if any postcard is returned as undeliverable, the administrator will both re-mail the postcard to any identified forwarding address *and* send an email to the potential class members to the extent an email address was provided by State Farm for those insureds. *See* Not. Pl. at 2. Notwithstanding this comprehensive plan for individualized notice (and a further planned publication notice in the Arkansas Democrat-Gazette, *id.* at 3), Plaintiffs also propose that State Farm post an unnecessary, prejudicial, and confusing "banner" advertisement regarding the lawsuit on *its own website*. This proposal should be rejected.

### A. The Banner is Completely Unnecessary.

As a threshold matter, Plaintiffs' proposed banner advertisement is entirely unnecessary here given the existing plan for individualized notice. Consistent with Rule 23, Plaintiffs' Proposed Notice Plan appropriately targets, individually, persons who may be members of the certified class. It directs State Farm to gather names and addresses for all persons who potentially meet Plaintiffs' class definition and then proposes that notice be sent individually to those persons. *Id.* at 1-2. State Farm has complied with the first step already by identifying Arkansas insureds

---

is to ensure that the plaintiff class receives notice of the action well *before* the merits of the case are adjudicated.") (emphasis in original). State Farm's proposed case management plan (Dkt. 164 at 5) properly scheduled briefing on dispositive motions to begin in December 2019 – well *after* the completion of class notice as proposed here.

who made claims within the relevant time period and whose last-uploaded estimate reflected application of depreciation to the labor component of estimated repair costs.[6]

Under these circumstances, and given that Plaintiffs already propose to publish notice in an Arkansas newspaper, there is no need for a further "publication"-like notice on State Farm's website. Indeed, to State Farm's knowledge, in the rare circumstances in which courts have approved class notice-related postings on a defendant's website, they have done so only because there is no way to provide the individualized notice preferred under Rule 23. *See, e.g., Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *4, *8 (S.D.N.Y. Dec. 6, 2010) (approving the posting of class notice on Best Buy's website as "a form of publication—and not individual—notice" in a case where "class members cannot be identified for purposes of sending individual notice" and, thus, "individual notice is impossible"). No such obstacle to individual notice exists in this case.

      **B.    The Banner is Prejudicial and Without Justification.**

A further issue with Plaintiffs' banner proposal is that, as several courts have recognized, requiring a defendant to post notice of a class action on its own website is unfairly prejudicial to the defendant – especially when it does not materially increase the number of class members who receive notice. *See, e.g., Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2017 WL 4418684, at *6 (D. Colo. Apr. 28, 2017) (agreeing that requiring the posting of notice on defendants' websites "could negatively and unfairly impact Defendants' business interests," and

---

[6] As State Farm demonstrated in opposition to class certification, some insureds whose last-uploaded estimate reflects application of labor depreciation may in fact have had their claim paid up front on a replacement cost basis and may never have received an actual cash value ("ACV") payment with labor depreciation applied. *See, e.g.,* Dkt. 87 at 9-10, 23-24. Thus, the potential class members State Farm has identified, involving approximately 16,000 claims during the relevant time period, may be somewhat overinclusive.

rejecting the proposal because it "has only an incremental chance of reaching plaintiffs who otherwise would [not] receive notice"); *Mark v. Gawker Media LLC*, No. 13-CV-4347 AJN, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014) (rejecting proposal to post notice link on defendants' website because such action "extracts a cost from Defendants, and has the potential to appear punitive, while the incremental chance that potential plaintiffs who do not otherwise receive notice would see it and become aware of their rights is small"). These same concerns apply here.

First, posting a banner advertisement on the website Plaintiffs reference in their Proposed Notice Plan (https://www.statefarm.com/customer-care/insurance-bill-pay) could have significant repercussions to State Farm's business. Among other things, the website is not limited to Arkansas, much less to insureds who had structural damage policies with State Farm Fire and Casualty Company. Rather, it is a payment login page available for *all* State Farm customers, whether for auto insurance, life insurance, or any other variety of insurance. Declaration of Wade Smith, attached as Exhibit A, at ¶¶ 4-5. Moreover, the website is not even restricted to *insurance* customers. As the header at the top of the website indicates, the page is accessible to State Farm banking customers as well:



*Id.* at ¶ 6.

Although there are only approximately 16,000 claims at issue in the class, in 2018 alone there were *5 million* unique visitors to the website – some of whom may be prospective customers of State Farm. *Id.* at ¶¶ 6-7. Thus, even if the banner advertisement could somehow be restricted

to people accessing the website (or the mobile application) from Arkansas, it would still be seen by an overly broad group of existing and prospective State Farm customers – and would prompt all manner of questions to State Farm from people who are not, and could never be, members of the certified class. It further would negatively impact State Farm's brand in that it would display notice of class litigation against State Farm prominently on the company's website.

Furthermore, Plaintiffs' proposal is completely devoid of factual support to show that a banner advertisement on State Farm's website (or on its mobile application) will materially increase the number of class members who receive notice. Indeed, some courts have been reluctant to include banner advertisements as part of a notice plan absent proof that the advertisements will work. *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2013 WL 139732, at *2 (D. Kan. Jan. 10, 2013) (rejecting proposed notice plan based in part on banner advertisements, and referencing study suggesting "that more than 90 per cent of people do not click on banner advertisements"); *Brown v. Sega Amusements, U.S.A., Inc.*, No. 13 CIV. 7558 RMB HBP, 2015 WL 1062409, at *2 (S.D.N.Y. Mar. 9, 2015) (rejecting notice plan based in part on banner advertisements because plaintiff "provides no factual basis for its assertion that the various proposed 'banner ads' are likely to be seen by any, much less most or all, potential class members"). Here, Plaintiffs do not make any showing that class members who are still State Farm insureds (six to nine years after the date of the relevant claims herein) would be likely to click on the banner advertisement at the payment login page and would not otherwise receive notice through the mail.

      C.    **The Banner Will Confuse Current State Farm Insureds.**

Posting the banner advertisement on State Farm's website or on its mobile application is further unwarranted here given the significant risk of confusion to current State Farm insureds. In particular, if a current Arkansas State Farm insured clicks on the banner and reads the notice, they

could very well be confused given that current Arkansas law, as adopted in their policies, *expressly permits* the very conduct about which Plaintiffs here complain, *see* ARK. CODE § 23-88-106(a)(2) (2017), as does the law in the majority of jurisdictions nationwide.[7] This risk of confusion is unavoidable both for current State Farm insureds who also happen to be members of Plaintiff's class and for current State Farm insureds who are *not*, and will *never be*, members of Plaintiffs' class. Given Plaintiffs' failure to show that the proposed banner advertisement will materially increase the number of class members who receive notice, this risk of confusion is unacceptable.

### D. The Banner is Inconsistent with Notice Plans this Court Has Approved.

None of the notice plans in any of the labor depreciation class action cases settled before this Court – each of which involved most of the same attorneys who represent Plaintiffs here – included (or even proposed) a website banner on the defendant's website. *See* Orders from *Braden*, *Larey*, and *Green* cited at note 3, *supra*. That track record fully demonstrates the absence of any need or occasion for Plaintiffs' proposal for a banner ad on State Farm's website here.[8]

### II. Plaintiffs' Proposed Notice Plan Creates Unnecessary Hurdles for Opt-Outs.

Class members must have a fair opportunity to choose whether to opt out of the class after receiving notice, and this right – "essentially an interest in due process" – must be protected. *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1025-26 (8th Cir. 2017). The Federal Judicial Center likewise instructs that there should be "no unnecessary hurdles that make it difficult for class members to exercise their right[] to opt out." FJC Guide, *supra* note 4, at 1. Plaintiffs' Proposed Notice Plan

---

[7] *See Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 677 (N.D. Ohio 2018) (collecting cases), *appeal docketed*, No. 19-3004 (6th Cir. Jan. 2, 2019).

[8] Moreover, Plaintiffs' counsel here offered to drop the banner proposal entirely if State Farm would agree to pay for half of the costs of notice. As noted in Section IV, *supra*, such cost-shifting is insupportable under established law. This also amply illustrates that the banner proposal is unnecessary and not a meaningful element of Plaintiffs' notice plan.

here includes two unnecessary hurdles: (1) it precludes opt outs by email; and (2) it sets the opt-out deadline at just 60 days after the notice administrator *begins* mailing and publication notice. Both proposals should be modified.

There is no good reason (and certainly none offered by Plaintiffs with their plan) for why class members should be precluded from opting out by email in addition to by regular mail. As long as the email contains the key information specified in the long-form notice, *i.e.*, the case name, a statement that the class member wants to be excluded, and the opt-out's name and contact information, *see* Not. Pl., Ex. B at 5, there is no need to create an artificial requirement of physical mailing. Indeed, there may be a number of class members who "wish to opt out" but "would not be inclined to a make a trip to the post office" and pay money to send a physical letter. *Murphy v. LenderLive Network, Inc.*, No. 13-CV-03135-RBJ, 2014 WL 5396165, at *6 (D. Colo. Oct. 22, 2014). Those class members should have the same right to exclude themselves as those individuals who have time or inclination to go to the post-office. *See id.* (rejecting proposed physical mailing requirement for opt-outs and ordering plaintiffs to advise class members of their right to opt-out "via . . . email").

Second, Plaintiffs' proposed opt-out deadline – just 60 days after the notice administrator *begins* mailing and publication – is too short. Although publication notice under the Proposed Notice Plan starts on the first date of mailing, it continues for four weeks thereafter. Not. Pl. at 3. Thus, there may be class members who do not see the publication until 28 days into the opt-out period. Under Plaintiffs' proposed schedule, those class members will have barely 30 days to decide whether to opt out of the class. Similarly, under the Proposed Notice Plan, any postcard notices returned as undeliverable are re-mailed to the forwarding address. *Id.* at 2. Given the age of the claims at issue here (2010-2013), there likely will be class members whose address

information is outdated. The initial mailing and return process could itself take up to two weeks, plus another week if the mail is forwarded to a new address. Thus, class members who receive forwarded mail could again have only a little more than 30 days to decide whether to opt out. That timeframe is far too abbreviated. According to the Federal Judicial Center, a "minimum of 30 days is necessary from *completed* dissemination before [opt-out] deadlines, *with 60–90 days preferred*." FJC Guide, *supra* note 4, at 1 (emphasis added). The additional time "allows for re-mailings, fulfillment of requests for more information, and consideration of rights and options." *Id*. To account for the extended publication schedule and the potential for re-mailings in this case, State Farm submits that an opt-out deadline of at least 90 days from the date of mailing would be more appropriate.

### III.     Plaintiffs' Proposed Format for the Notice List Creates an Unnecessary Dispute.

Even though the parties conferred and *agreed* regarding the data State Farm would provide for the class notice list, Plaintiffs' Proposed Notice Plan creates a new, unnecessary dispute by proposing a data field that is not needed for class notice and further proposing that the data be produced in a particular format. Not. Pl. at 1-2 & Ex. D.

During the meet and confer process on notice issues, State Farm advised Plaintiffs that it would provide the following data fields in the notice listing: name, mailing address, email address (if known), date of loss, and claim number. *See* Feb. 26, 2019 email attached as Exhibit B. Plaintiffs *agreed* during a meet and confer discussion that these data fields were sufficient. State Farm has now collected the agreed data for all potential class members and has compiled that data into a reasonably usable spreadsheet and is readying the same for production.

With their Proposed Notice Plan, however, Plaintiffs have now suggested that a *further* data field be included – namely, "policy number" – and have also proposed, without justification, that State Farm conform its notice spreadsheet to Plaintiffs' preferred spreadsheet format. *See*

Not. Pl. at 1-2 & Ex. D. Neither proposal is necessary here. First, State Farm has already agreed to provide the claim number associated with each potential class member. *That* number already identifies the claims potentially at issue in the case. It would be a waste of resources to force State Farm to modify the class notice list data it has already collected.[9] Second, there is no need for State Farm to conform the notice list to the precise column headers and column format requested by Plaintiffs (or for the Court to supervise such issues). State Farm will provide the relevant data fields – name, mailing address, email address (if known), date of loss, and claim number – in a reasonably useable spreadsheet format. Nothing more is required.

## IV. Plaintiffs and Their Counsel Should Bear the Cost of Notice.

Finally, although the Proposed Notice Plan is silent as to the costs of notice, State Farm submits that for the avoidance of doubt, the Plan should specify that Plaintiffs and their counsel should bear the costs. That result is consistent with the "usual rule," namely, "that a plaintiff must initially bear the cost of notice to the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Moreover, although some courts have shifted notice costs to the defendant "once the defendant's liability has been established," *Barfield v. Sho-Me Power Elec. Co-op*, No. 2:11-cv-4321, 2014 WL 1955107, at *8 (W.D. Mo. May 14, 2014), no decision on the merits has yet issued here. Plaintiffs effectively concede this point throughout their proposed notice:

- "The Court has not yet decided whether State Farm did anything wrong." Not. Pl., Ex. B at 1.

- "Lawyers must prove the claims against State Farm at a trial . . . ." *Id.*

- "The trial is to decide whether the claims being made against State Farm are correct." *Id.* at 3.

---

[9] State Farm, in any event, has already responded to interrogatories with data indicating the policy numbers associated with the State Farm insureds who made the claims potentially within the certified class.

- "The Court has not yet ruled on Plaintiffs' claims or State Farm's defenses." *Id.*

- "No money is available now because the Court has not yet decided whether State Farm did anything wrong." *Id.*

- "During the trial, the Judge or jury will hear all of the evidence to help reach a decision about whether the Plaintiffs or State Farm are right about the claims in the lawsuit. There is no guarantee that the Plaintiffs will win or that they will get any money for the Class." *Id.* at 7.

Plaintiffs did not seek any shifting of costs in their Motion and it would be too late for them to make the request for the first time in a reply.

## CONCLUSION

For all of the foregoing reasons, State Farm respectfully requests that the Court make the changes discussed herein before approving Plaintiffs' Proposed Notice Plan. State Farm will submit a Proposed Order regarding Plaintiffs' Proposed Notice Plan for the Court's consideration.

Dated: April 15, 2019 /s/ *Joseph A. Cancila, Jr.*

John E. Moore
Beverly A. Rowlett
MUNSON, ROWLETT, MOORE & BOONE, P.A.
Regions Center
400 West Capitol Avenue, Suite 1900
Little Rock, AR 72201
(501) 374-6535

Joseph A. Cancila, Jr. (*pro hac*)
Heidi Dalenberg (*pro hac*)
Jacob L. Kahn (*pro hac*)
Tal C. Chaiken (*pro hac*)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
(312) 471-8700

*Attorneys for Defendant State Farm Fire and Casualty Company*

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record. This 15th day of April 2019.

                 */s/ Joseph A. Cancila, Jr.*