**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| JAMES STUART and CAREDA L. HOOD, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 14-cv-04001 |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF OPPOSED MOTION FOR ORDER**
**APPROVING CLASS NOTICE PLAN AND CLASS NOTICE**

Plaintiffs file this Reply in Support of Opposed Motion for Order Approving Class Notice

Plan and Class Notice, and in support state the following:

State Farm continues to try to dictate how its claims settlement practices, and this

litigation, should proceed. Despite being told years ago by the Arkansas Supreme Court that

labor depreciation during the Class Period was unlawful, State Farm refuses to give the money

back to its insureds. And now, having had its class certification arguments rejected by this

Court, and the Eighth Circuit twice[1], State Farm wants to control how notice will be given to the

Class Members from whom it has wrongfully taken, and then long withheld, insurance proceeds.

State Farm's opposition to Plaintiffs' notice plan is absurd. The notion that State Farm is raising

legitimate concerns on behalf of the Class—the very people it unlawfully withheld money from,

and to whom it refuses to repay despite controlling Arkansas precedent that is now over five

years old—as opposed to solely self-interested objections, cannot be taken seriously. Class

---

[1] Despite the three orders, State Farm continues to let this Court know at every turn that the Court got it wrong, and that "State Farm continues to maintain that, for myriad reasons, no class should be certified in this matter." Response at 1, n. 2.

Counsel and this Court should make the decisions about notice to the Class that this Court certified and for whom this Court has appointed the undersigned as Counsel.

**I.      This is not a settlement; therefore, State Farm does not get to dictate the notice program.**

State Farm repeatedly points to differences between Plaintiffs' proposed notice plan and prior *settlement* notice plans that this Court approved in *settled* class actions.  Response at 2, 8.  Settlement notice plans are negotiated as part of a class settlement.  Indeed, a notice plan is an integral part of the settlement, and the defendant insurance company certainly has a say in that process as part of the overall negotiation.  Here, there is no settlement.  It follows, therefore, that State Farm does not get to dictate to the Plaintiffs what can, and cannot, be part of the plan.

Plaintiffs did attempt to negotiate an agreed plan in order to remove a contested motion from the Court's docket.  That exercise failed.  Despite State Farm's unprincipled recitation of the details of that discussion, *see* Resp. at 8, n. 8[2], the parties reached no agreement.  Accords proffered for the sole goal of building common ground are not in any way binding, or relevant, when the counter-party spurns the olive branch, as State Farm did here.  It is spurious for State Farm to assert that Plaintiffs should be held to terms that were going to be part of a negotiated deal that fell through.

Further, State Farm contends that Plaintiffs should pay for the notice plan.  Response at 11-12.  Notice costs are assessed as taxable court costs.  Plaintiffs are willing to pay for the notice program on the front end (to be assessed against State Farm as costs later on in the case should Plaintiffs prevail), but it should be the notice program that Plaintiffs have designed for the

---

[2] State Farm's conduct here makes open dialogue—which ought to be encouraged in order to limit the need for Court intervention on every matter—impossible.  Counsel should be able to have discussions to attempt to resolve matters without being concerned that such discussions will become part of the record should the talks fail to bear fruit. Class Counsel consider this a learning lesson as to how to engage with State Farm's counsel.

Class's benefit.  Plaintiffs previously offered many accommodations to reach an agreed notice plan premised on the parties sharing costs.  State Farm apparently was too penurious to pick up its share (about $12,500).

**II.     The Court should order the banner be placed on State Farm's website.**

At present, Plaintiffs have proposed that the banner be placed on the payment portal, which Plaintiffs identified in the notice plan as www.statefarm.com/customer-care/insurance-bill-pay).  In order to address the bulk of State Farm's concerns, Plaintiffs would agree that the banner be placed on the page that appears *after* the customer logs into the payment portal.  Class Counsel do not know the URL for that page, but assuredly State Farm could provide that information.  The revised portion of the Notice Plan would read:

> 7.     In addition to the foregoing, Defendants shall maintain until further order of this Court, the website Banner (**Exhibit C**) on the ~~any~~ payment portal screen that <u>appears immediately following the password login that</u> can be accessed by any of Defendants' Arkansas policyholders via computer (including, *e.g*, http://_____ ~~https://www.statefarm.com/customer-care/insurance-bill-pay~~) or State Farm mobile app.

With that concession, the remainder of State Farm's complaints should be rejected.

**A.     There is no evidence, as opposed to conjecture, that the ad will cause any harm.**

State Farm spends the bulk of its motion opposing the prong of the notice plan that would require State Farm to place a banner on its website.  The crux of State Farm's opposition to the banner is that it is "completely unnecessary" and "could have significant repercussions to State Farm's business."  Response at 6.  State Farm provides *zero* evidence in support of its fear of repercussions; it is sole conjecture.

The lack of evidence is notable.  Indeed, how could State Farm argue with any credibility that the banner would cause any more damage to its business that its unlawful business practices have already accomplished?  Here are just a few of the articles written about State Farm's labor

depreciation practices:

- https://news.bloomberglaw.com/class-action/state-farm-customers-get-class-status-in-underpayment-lawsuit
- https://www.law360.com/articles/1131605/state-farm-policyholders-win-cert-in-labor-costs-fight
- http://www.timoneyknox.com/insurance-industry/kentucky-federal-court-certifies-class-labor-depreciation-dispute
- http://www.mondaq.com/unitedstates/x/760502/Class+Actions/Labor+Depreciation+Class+Actions+Get+New+Life
- https://law.justia.com/cases/federal/appellate-courts/ca8/16-3784/16-3784-2018-12-06.html (this case)
- https://www.lexology.com/library/detail.aspx?g=031aacc6-9962-48d9-9ccb-57091b351a04 (this case)

State Farm chose to appeal this Court's class certification to the Eighth Circuit. While State Farm assuredly has a right to do so, such action brings with it additional news coverage. Having garnered the coverage, State Farm is certainly in no position to argue that additional notice to the class about the case, via a banner, would "negatively impact State Farm's brand." If State Farm really cared about its brand (as opposed to keeping the money that it took from Arkansas insureds), it would not breach the insurance agreements in the first instance. But it is a bit late for complaint now. State Farm chose to fight Plaintiffs instead of giving the money back. A consequence of that decision is that the world gets to know about State Farm's alleged misconduct. So be it. Until this point, State Farm has seemed undeterred by any negative publicity arising from its decision to routinely underpay homeowners' claims.

**B.      Electronic notice is now expressly permitted under Rule 23.**

"The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out[.]" 2018 Advisory Committee Notes to Rule 23, ¶ 7. Rule 23 was recently amended to provide that "[t]he notice may be by one or more of the following: United States mail, *electronic means*, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B) (emphasis added).

> Instead of preferring any one means of notice, therefore, the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The Court should exercise its discretion to sell appropriate means of giving notice.

2018 Advisory Committee Notes to Rule 23, ¶ 5.

This change is consistent with the change in which the general population seeks out, and receives, information.[3]   "The World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at \*3 (S.D. Cal. Feb. 5, 2019) (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004)).   A company's website can "be viewed as a publication" for purposes of notice. *Id.* at \*3.

While State Farm complains that undersigned counsel have not asked for banners in other prior ***settlements*** before this Court, undersigned counsel did ask for banners in two recently certified federal class actions handled by Judge Robert Pitman (W.D. Tex.):

> Having reviewed the parties' joint proposed plan and agreed Class Notice, Postcard Notice, ***and website banner***, (Joint Class Notice Plan, Dkt. 224-1), the Court finds that the Joint Class Notice Plan provides the best notice that is practicable under the circumstances, and provides for individual notice to all class members who can be identified through reasonable effort as required under Rule 23(c)(2)(B). The Court finds that the Joint Class Notice Plan and exhibits clearly and concisely state in plain, easily understood language the requirements under Rule 23(c)(2)(B). The Court also finds that the Joint Class Notice Plan describes the proceedings in objective and neutral terms. *See In re Deepwater Horizon*, 739 F.3d at 819. Finally, the Court finds that the Joint Class Notice Plan meets or exceeds the requirements for due process. *See In re Nissan Motor Corp.*, 552 F.2d at 1105.

*Cleven v. Mid-Am. Apartment Communities, Inc.*, 2018 WL 7077069, at \*1 (W.D. Tex. Oct. 22, 2018); *Brown v. Mid-Am. Apartments, LP*, No. 1:17-CV-00307-RP, ECF No. 31, \*2-3 (W.D. Tex. Oct. 22, 2018).  Indeed, the defendant in those cases apparently found the banner request so

---

[3] "Indeed, today, millions of Americans communicate and/or consume media through digital or electronic methods. In fact, you're reading this article online and you're in good company! Research indicates that online sources are the main source of news in the U.S., surpassing both television and print. It is estimated that more than 30 million Americans get their news via the Internet each day."
https://www.arnoldporter.com/~/media/files/perspectives/publications/2016/04/electronic-class-notice-may-be-the-best-notice-practicable.pdf

innocuous that it was not even challenged (the notice plans were jointly filed).  Each of those notice plans were approved by Judge Pitman subsequent to the latest class settlement notice program approved by this Court in a depreciation of labor case.  The banners in this case mirror the ones approved by Judge Pitman.

 **C.**  **The banner is not "unnecessary."**

As described by Rule 23 and the Advisory Committee Notes, a notice program can include several forms of notice.  2018 Advisory Committee Notes to Rule 23, ¶ 5 ("means or combination of means").  State Farm contends the banner is unnecessary because notice is being given in other means.  The emailed notice is intended to reach class members who did not receive a mailed notice, and newspaper publication notice is intended to reach class members who did not receive either a mailed or emailed noticenotice.  The banner prong of the notice plan is intended to serve as an equivalent to publication—an alternative means to reach class members who received neither the postcard nor the email notice.

 **D.**  **Publication notice is not defective simply because it extends beyond the region where Class members reside.**

State Farm objects that the website on which the banner is to be placed is broader in reach than just Arkansas.  That specific objection was rejected in *Martin v. Weiner*:

> In *Martin v. Weiner*, 2007 WL 4232791, at *3 (W.D.N.Y. Nov. 28, 2007), for example, the court upheld the plaintiffs' request to post notice on the websites of statewide agencies (such as the New York Department of Health), even though the class was comprised only of residents of one New York county.  The defendants objected to notice on their websites as overinclusive.  *Id.*  The court explained that although notice on the defendants' websites "may be over inclusive in notifying the entire state for a regionally based class," it is no different than "posting a notice in a general circulation newspaper where a number of readers would not be interested class members."  *Id.*

*Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010).  This Court has repeatedly approved newspaper publication notice.  The *Martin* court held that a banner is no

different than "posting a notice in a general circulation newspaper where a number of readers would not be interested class members."  State Farm's objection lacks merit.

      **E.**      **There is no evidence that the banner will be confusing.**

State Farm asserts—again without any evidentiary support—that the banner will be confusing, and that "the risk of confusion is unacceptable." Response at 8.  The purported confusion keys off the issue that labor depreciation was prohibited throughout the Class Period, but is permitted currently via a legislatively-enacted change that occurred following the insurance industry's lobbying efforts.  But the banner itself (Plaintiffs' Ex. C to Ex. 1) says *nothing* about labor depreciation. So the banner itself cannot be in any way "confusing." Further, the banner simply directs class members to the notice website, where the Long Form Notice and Postcard Notice are available for review. State Farm has raised no argument whatsoever in the response that Exhibit A (Long Form Notice) and Exhibit B (Postcard) are confusing.  (What *is* confusing is why an insurance company thinks it is good business to violate Arkansas law, and then keep the money that it wrongfully retained.)

**III.**     **The Proposed Notice Plan permits opt-outs in a mechanism routinely approved by this Court.**

The Notice Plan provides that opt outs be made via a signed letter sent by regular mail to the Third Party Administrator ("TPA").  The TPA is charged with compiling a list of timely opt-outs based on the postmark, and a list of untimely or otherwise defective opt-outs.  This is the same procedure routinely approved by this Court in regard to opt-outs.

Notably, it is also the same procedure agreed to by State Farm in another class action settlement.  *See* **Ex. 1** hereto (agreed long form notice in *Thompson v. State Farm* stating, "you

can't exclude yourself on the phone or by e-mail").[4]  And it is the same procedure ordered by the district court in a contested class action case involving State Farm.  *See* **Ex. 2** hereto (long form notice in *Vogt v. State Farm* (W.D. Mo.) stating "[t]o ask to be excluded, also sometimes referred to as 'opting out' of the class, you must send an 'Exclusion Request' in the form of a letter sent by mail").[5]

Contrary to State Farm's contention that Plaintiffs are erecting unnecessary hurdles to opting-out, Plaintiffs have actually proposed an opt-out mechanism that mirrors the norm approved around the country.  State Farm's reliance on one outlier unpublished opinion from a district court in Colorado is of no moment.

### IV.    The Proposed Notice Plan permits opt-outs on a timeline routinely approved by this Court.

There is no merit to Defendants' objection that that the deadline for opting out is too short.  Even under State Farm's math (with calculations performed in such a way as to try to illustrate how short the time period is), Class members would have at least 30 days to opt out. That meets the Federal Judicial Center minimum as noted in State Farm's response.  Response at 10 ("minimum of 30 days is necessary", citing FJC Guide).  State Farm understandably wants to slow the train down to ensure that it can keep its ill-gotten gains as long as possible, but the Class—represented by the undersigned per this Court's order—are entitled to a more prompt resolution.  As the timelines proposed comport with Due Process, State Farm's sudden desire to look out for the Class should be viewed with skepticism, and the objection denied.

---

[4] The full Settlement Agreement, dated May 8, 2018, is accessible at
http://www.statefarmdiminishedvaluelitigation.com/docs/SA%20and%20Exhibits.pdf.
[5] Additional documents at http://www.sfcoilitigation.com/important-documents.

**V.      The Proposed Notice Plan seeks information squarely in the hands of State Farm.**

State Farm seems determined to dictate to the Court and to Plaintiffs how *it* will go about providing data, and what *it* will be willing to provide.  Response at 11 ("there is no need for State Farm to conform the notice list to the precise column headers and the column format request by Plaintiffs (or for the Court to supervise such issues).").  Plaintiffs' request for policy numbers to be included in the class data (in addition to the remaining data to which State Farm does not object) is not overly burdensome.  As State Farm notes, it had already gathered policy numbers for the claims and provided that to the Plaintiffs in response to interrogatory requests.  Having the data in hand will allow State Farm to easily append that to the name, address, and claim number data.  State Farm's objection should be rejected.

PRAYER

For these reasons, the Plaintiffs request that the Court enter an order approving the Class Notice Plan, and direct the parties and the Third Party Administrator to effectuate the Notice Plan (as modified by Section II, *supra*).

Dated: April 22, 2019

Respectfully submitted,

/s/ *Matt  Keil*
JOHN C. GOODSON
Arkansas Bar No. 90018
MATT KEIL
Arkansas Bar No. 86099
**KEIL &GOODSON P.A.**
406 Walnut Street
Texarkana, AR 71854
Telephone: 870.772.4113
Facsimile: 870.773.2967

MATTHEW L.MUSTOKOFF
RICHARD A. RUSSO, JR.
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: 610.667.7706
Facsimile: 610.667.7056

TOM THOMPSON
Arkansas Bar number 77133
CASEY CASTLEBERRY
Arkansas Bar Number 2003109
**MURPHY, THOMPSON, ARNOLD,
SKINNER &CASTLEBERRY**
555 East Main Street, Suite 200
P.O. Box 2595
Batesville, AR 72503-2595
Telephone: 870.793.3821
Facsimile: 870. 793.3815

RICHARD E. NORMAN
R.MARTIN WEBER, JR.
**CROWLEY NORMAN LLP**
Three Riverway, Ste. 1775
Houston, TX 77056
Telephone: 713.651.1771
Facsimile: 713.651.1775

STEVEN E. VOWELL
Arkansas Bar No. 75134
**TAYLOR LAW PARTNERS, LLP**
303 E. Millsap Road
P.O. Box 8310
Fayetteville, AR 72703
Telephone: 479.443.5222

JAMES M. PRATT, JR.
Arkansas Bar No. 74124
**JAMES M. PRATT, JR., P.A.**
144 Washington NW
Post Office Box 938
Camden, AR 71701
Telephone: 870.836.7328
Facsimile: 870.837.2405

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As such, this pleading was served on all counsel who are deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by regular mail on April 22, 2019.

/s/ *Matt  Keil*
Matt Keil