IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES STUART and CAREDA L.
HOOD, individually and on behalf
of all others similarly situated                                              PLAINTIFFS

v.                                  Case No. 4:14-cv-4001

STATE FARM FIRE AND CASUALTY
COMPANY
                                                                              DEFENDANT

## ORDER

Before the Court is Plaintiffs' Opposed Motion for Order Approving Class Notice Plan and Class Notice. (ECF No. 168). Defendant has filed a response. (ECF No. 175). Plaintiffs have filed a reply. (ECF No. 179). The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiffs assert that Defendant unlawfully depreciated labor in calculating their payment obligations under the parties' homeowner's insurance contracts. Plaintiffs allege that Arkansas law in place at the time prohibited an insurance company from depreciating the cost of labor. Plaintiffs claim that, by depreciating this cost in initial "actual cash value" payments made to insureds, Defendant breached its contract with Plaintiffs.

On August 24, 2016, the Court granted Plaintiffs' motion for class certification. (ECF No. 142). Defendant subsequently appealed that ruling pursuant to Federal Rule of Civil Procedure 23(f). On December 6, 2018, the Eighth Circuit issued its opinion, affirming the Court's certification ruling, as modified.

On April 1, 2019, Plaintiffs filed the instant motion, asking the Court to approve its proposed Class Notice Plan (ECF No. 168-1) and require that the parties and proposed third-party

administrator, JND Legal Administration ("JND"), carry out and comply with the terms of the notice plan. Plaintiffs' proposed Class Notice Plan provides as follows. Notice will be given to the class via individually mailed notices, a website banner notification, a newspaper publication, and a class-action website. To accomplish this, within twenty-one days of the Court's approval of the Class Notice Plan, Defendant will compile in an electronic format substantively similar to Plaintiffs' Exhibit D (ECF No. 168-1, p. 15), the following information for all persons who meet the Class Definition from the period of May 1, 2010, through December 6, 2013: first and last name, last known mailing address, last known email address, policy and claim numbers, and date of covered loss. This information will be transmitted to Plaintiffs' counsel, who will provide it to the third-party administrator.

The third-party administrator will then mail to each class member's last known address a Postcard Notice, in a form substantially similar to Plaintiffs' Exhibit A (ECF No. 168-1, p. 6). If any mailing is returned with a forwarding address, the third-party administrator will mail the Postcard Notice to that address. The third-party administrator will also email the contents of the Postcard Notice to any known email address of a class member whose Postcard Notice mailing is returned.

The third-party administrator will place a publication notice in the Arkansas Democrat-Gazette, in a form substantially similar to Plaintiffs' Exhibit E (ECF No. 168-1, p. 16), running once a week for four consecutive weeks. The third-party administrator will also create and maintain a dedicated case website that will host, *inter alia*, the pleadings filed in this case, the Court's class certification order and the Eighth Circuit's opinion affirming the same, the individual notice forms discussed above, and this case's operative Final Scheduling Order.

Defendant will also place a banner on its website, in a form substantially similar to Plaintiffs' Exhibit C (ECF No. 168-1, p. 14). The banner will be located at the top of the screen

after an existing customer logs into the payment portal[1] and will be accessible both via computer and on Defendant's mobile app. The banner states that a class action lawsuit may affect the rights of insureds who received an actual cash value payment for a covered loss between May 1, 2010, and December 6, 2013. The banner will also link to the class website.[2]

Class members who do not validly and timely opt out of the class will be bound by the terms of any final judgment entered in this case. Class members may opt out of the class only by mailing to the third-party administrator a letter containing this case's name and case number; the class member's name, address, telephone number, and signature; and a sentence expressly stating that the individual wishes to be excluded from the class. (ECF No. 168-1, p. 4). To be valid and timely, an opt-out request must be mailed to a specified address and must be postmarked on or before an exclusion deadline date. The opt-out period will run for sixty days, beginning on the date the third-party administrator begins mailing and publication.

On April 15, 2019, Defendant responded to the instant motion. Defendant makes no objection to most of Plaintiffs' proposed Class Notice Plan. However, Defendant requests that the Court reject five aspects of the proposed plan and modify the plan accordingly before approving the notice plan.

---

[1] Plaintiffs initially requested that the banner be placed at the top of the payment portal log-in page, where it could be seen by anyone who accessed the website, whether they are current or prospective customers. Defendant responded, in part, that the banner would be seen by an overinclusive group of both current and prospective customers and, thus, the banner would be unduly prejudicial to Defendant. Plaintiffs state in their reply brief that, to alleviate that concern, they are willing to have the banner instead be displayed *after* a current customer logs into the payment portal.

[2] Although not explicitly stated in the proposed Class Notice Plan, the Court assumes that the website linked to by the banner is the same website maintained by the third-party administrator. Creating further confusion, the proposed Class Notice Plan discusses three different URLs when referencing the case website: "www.stuart v state farm.com," "www.Stuart-v-StateFarm.com," and "www.statefarmDOLclassaction.com," (ECF No. 168-1, pp. 3, 13-14), the last of which is listed on Plaintiffs' proposed banner, and the first two of which are mentioned regarding the third-party administrator's website. It is unclear to the Court which of these three URLs will be chosen and used for the case website maintained by the third-party administrator, or if the three URLs are interchangeable and will all link to the same website. If the URLs are not interchangeable, the Class Notice Plan and its exhibits require revision to accurately reflect whichever URL is ultimately utilized.

## II. DISCUSSION

For any class certified under Federal Rule of Civil Procedure 23(b)(3), courts must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Because "an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class," constitutional due process requires that the class be provided the best notice practicable, "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . and . . . must afford a reasonable time for those interested to make their appearance." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975). To that end, the class notice must "clearly and concisely state in plain, easily understood language" the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims; (4) that a class member may enter an appearance through an attorney if so desired; (5) that the court will exclude from the class those members who request exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Providing class notice is not an exact science, however, and the specific mechanics of the notice process "are left to the discretion of the court[,] subject only to the broad 'reasonableness' standards imposed by due process." *Grunin*, 513 F.2d at 121.

Defendant objects to portions of Plaintiffs' proposed Class Notice Plan. Specifically, Defendant takes issue with the following five aspects of the proposed plan: (1) the placement of a banner on Defendant's website; (2) that class members may only opt out of the class via letter; (3) the length of the opt-out period; (4) the requirement that Defendant must compile the class members' information, including each policy number, in a digital spreadsheet format resembling Plaintiffs' Exhibit D; and (5) that the proposed Class Notice Plan does not address who bears the

cost of the notice process.³ The Court will discuss each challenged item in turn.

**A. Website Banner**

The major fighting point of Plaintiffs' proposed Class Notice Plan is the requirement that Defendant place a banner on its website, located at the top of the screen after an existing customer logs into the payment portal, which will be accessible both via computer and on Defendant's mobile app. The website banner would state that a class action lawsuit may affect the rights of State Farm insureds who received an actual cash value payment for a covered loss to a dwelling or structure in Arkansas between May 1, 2010, and December 6, 2013. The banner would also link to the class website maintained by the third-party administrator.

Defendant objects on several grounds, arguing that the website banner: (1) is unnecessary because individual notice may be accomplished for most, if not all class members; (2) is unfairly prejudicial and could have significant negative effects on Defendant's business; (3) would be seen by an overly inclusive group of customers and could confuse Defendant's nationwide customer base; and (4) is inconsistent with notice plans this Court has approved in prior labor depreciation class action cases.

Plaintiffs argue that the website banner is not unnecessary because it would serve as a supplemental form of notice. Plaintiffs also argue that Defendant has provided no evidence that a website banner would negatively impact Defendant's business and that Defendant has already generated ample media coverage and publicity of this case by appealing the Court's class

---

³ Plaintiffs' proposed Class Notice Plan contains references to parties that have been dismissed from this case, namely former Plaintiff Jeff Dennington and former Defendant State Farm General Insurance Company. Likewise, the notice plan and its exhibits contain multiple references to "Defendants." Defendant mentions in a footnote of its response brief that these references are incorrect but does not request relief regarding those references. However, Defendant's proposed order indicates a desire to remove all such references. Although this request should have been made clear in the briefing papers, the Court agrees with Defendant that, for the sake of accuracy, the proposed Class Notice Plan and exhibits should be revised to remove all references to former Plaintiff Dennington and former Defendant State Farm General Insurance Company, and to change all instances of "Defendants" to "Defendant."

certification order. Plaintiffs argue further that Defendant has provided no evidence that a website banner would confuse people as to whether or not they are class members. Plaintiffs concede that this Court has not utilized a website banner in previous labor depreciation class action notice plans, but also note that Plaintiffs' counsel recently utilized website banners in two unopposed class notice plans approved in unrelated class actions in the United States District Court for the Eastern District of Texas. Plaintiffs also argue that notice by electronic means is specifically contemplated by Rule 23 and that courts in other jurisdictions have found the Internet to be a particularly effective means of providing notice. Thus, Plaintiffs analogize their proposed website banner to newspaper publication and conclude that the Court should approve its use as a supplemental form of notice to ensure that as many class members receive notice as possible.

Individual notice is required for all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). However, publication notice is often used as a supplement to individualized notice. *See* William B. Rubenstein, *3 Newberg on Class Actions* § 8:29 (5th ed. 2018). Although publication notice has traditionally been accomplished through newspaper ads, the Internet is increasingly becoming an acceptable avenue for accomplishing publication notice. *Id.* at § 8:30. Publication notice via the Internet is "a useful supplement to individual notice, might be provided at a relatively low cost, and will become increasingly useful as the percentage of the population that regularly relies on the Internet for information increases." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 254 F.R.D. 294, 299 (W.D. Tex. 2008) (citing David F. Herr, *Manual for Complex Litigation* § 21.311 (4th ed.)). "Accordingly, many courts include the Internet as a component of class certification and class . . . notice programs." *Id.*

District courts within the Eighth Circuit have approved the use of targeted banner ads on high-traffic, third-party websites in nationwide class action cases. *See, e.g., Swinton v.*

*SquareTrade, Inc.*, No. 418-cv-00144SMRSBJ, 2019 WL 617791, at *4 (S.D. Iowa Feb. 14, 2019) (authorizing banner ads on the Google Display Network and Facebook); *Klug v. Watts Regulator Co.*, No. 815-cv-00061JFBTDT, 2016 WL 7156480, at *3 (D. Neb. Dec. 7, 2016) (authorizing banner ads on the Conversant Ad Network, Yahoo Ad Network, and Facebook); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *8 (D. Minn. Feb. 27, 2013) (authorizing banner ads on major online networks such as AOL, Facebook, and 24/7 Real Media). However, it seems to be unsettled in this circuit whether a class notice plan can call for a website banner to be placed on the defendant's own website. The parties cite to various cases from nonbinding jurisdictions regarding the propriety of requiring a defendant do so, but neither party points the Court to authority from any court within the Eighth Circuit discussing the same.[4]

Upon careful consideration and for the reasons that follow, the Court finds that Defendants have not offered a sufficient reason to warrant removal of the website banner from Plaintiffs' proposed Class Notice Plan, and the Court will address each argument in turn.

The Court finds meritless Defendant's contention that the website banner could be viewed by Defendant's customers nationwide and, thus, is improperly overinclusive. Placement of a banner ad on a nationally accessible website is a form of publication notice. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010) (discussing placement of a banner ad on defendant Best Buy's website). Such is the case with Plaintiffs' proposed website banner, as it would be placed on Defendant's nationally accessible website. Because Plaintiffs' website banner is viewed as a publication, "the fact it is overinclusive is not a relevant consideration." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-

---

[4] As far as the Court can tell, no such authority exists.

GPC(MDD), 2019 WL 718807, at *3 (S.D. Cal. Feb. 5, 2019); *see also Jermyn*, 2010 WL 5187746, at *6-8 (finding that overinclusivity is a proper consideration for individual notice but not publication notice); *Stoffels*, 254 F.R.D. at 300. Thus, this argument fails to warrant removal of the website banner from the proposed Class Notice Plan.

The Court is also unpersuaded by Defendant's argument that the website banner should be omitted because it would confuse its nationwide customer base regarding whether they are part of the class and because labor depreciation is now currently permitted by Arkansas law. "Although Defendant complains that many non-class member[s] may view the notice and become confused, this is the case with all forms of publication notice." *Stoffels*, 254 F.R.D. at 300 (internal alterations added). Thus, the potential of confusion from the website banner is no different than the same potential of confusion inherent in a newspaper publication notice that might be seen by numerous non-class members. *Id.*; *Jermyn*, 2010 WL 5187746, at *8. Moreover, the potential for confusion related to Plaintiffs' proposed website banner is significantly lessened by its content, which makes no reference to the fact that this case concerns labor depreciation and specifically states that this case involves only those insured by Defendant who received actual cash value payments for loss or damage to a dwelling or structure in Arkansas during the defined class period. Thus, the banner appropriately specifies the geographic area that is at issue in this case. *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2013 WL 2368290, at *6 (D. Kan. May 29, 2013) (rejecting as a form of class notice an Internet banner advertisement that failed to specify what states and territories were involved in the suit).[5] Accordingly, the Court is unpersuaded by this argument.

The Court also finds Defendant's other arguments unavailing. Defendant offers no

---

[5] Even if a reader of the banner was nonetheless confused after viewing it, the proposed banner would link to the class website maintained by the third-party administrator, where the confused individual could read and review all pertinent documents in this case to ascertain whether they are, in fact, a class member.

8

evidence that placing Plaintiff's proposed banner on its website will cause significant harm to its business. Moreover, Plaintiffs' recent concession to place the banner after existing customers log into the payment portal will eliminate Defendant's concern that prospective customers will see the banner and be scared away from doing business with Defendant.

The fact that the Court has not approved the use of website banners in previous labor depreciation class action settlement notice plans is of no import to the instant determination. The parties in those previous labor depreciation cases did not seek to utilize a website banner but, rather, agreed that other forms of individual and publication notice sufficed to provide the notice required by Rule 23. Thus, in those prior cases—which the Court is not bound to follow in this case—the Court was never asked to determine whether a website banner has a place in a class notice plan and, accordingly, did not make such a determination. In contrast, the parties to this case disagree as to the efficacy of various terms of the proposed Class Notice Plan, thereby putting the website banner at issue for the first time.

Under the circumstances of this case, and in light of Defendant's hypothetical concerns regarding the timing in which individual notice might reach class members, (ECF No. 175, pp. 9-10), the Court finds it reasonable to authorize multiple forms of publication notice—including a website banner—to supplement the individual notice mechanisms. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice that is practicable under the circumstances"). A comprehensive notice plan such as the proposed Class Notice Plan, consisting of individual notice and various supplemental publication notices, finds support in Rule 23. *See* Fed. R. Civ. P. 23(c)(2) advisory committee's note to 2018 amendment ("Instead of preferring any one means of notice, [Rule 23] relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case."); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 602-03 (N.D. Ill. 2016) (authorizing a class notice plan consisting

of individual notice, alongside publication notice in national print publications and on the defendant's website and social media accounts); *Stoffels*, 254 F.R.D. at 298-300 (authorizing a class notice plan consisting of individual notice via U.S. mail and email, alongside publication notice in trade publications and on the defendant's website). The Court finds it particularly important to authorize a multi-faceted notice plan in this case because any judgment rendered will conclusively bind all class members who do not validly opt out of the class. Rule 23 requires that the Court provide the "best notice that is practicable under the circumstances" to protect the class members' due process rights, and the Court finds that a website banner would help fulfill that mandate. For these reasons, the Court disagrees with Defendant's characterization of the website banner as "unnecessary."

In sum, the Court finds that inclusion of the proposed website banner constitutes reasonable notice, as contemplated by Rule 23. Accordingly, the Court declines to modify this aspect of the proposed Class Notice Plan.

**B. Opt-Out Method**

Plaintiffs' proposed Class Notice Plan allows class members to opt out of the class only by mailing to the third-party administrator a letter stating the case name, the class member's name, address, telephone number, and signature, along with a sentence expressly stating that the individual wishes to be excluded from the class. (ECF No. 168-1, p. 4). Defendant objects, arguing that class members should also be able to opt out of the class via email. Defendant argues that allowing opt outs only via letter creates an unnecessary hurdle to opting out. Defendant also argues that the ability to opt out via email will be convenient for class members who might wish to opt out but have neither the time nor the inclination to go to the post office and pay money to send an opt-out letter.

Plaintiffs argue that allowing opt outs only by mail is a standard practice in class actions

before this Court and other courts. Plaintiffs argue further that Defendant has agreed in other, unrelated class action cases to a letter-only opt-out process. Accordingly, Plaintiffs argue that their opt-out process is proper and should be utilized as proposed.

"[D]ue process requires at a minimum that a[] [class member] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Rule 23 is not instructive on the precise mechanism required to accomplish this. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Grunin*, 513 F.2d at 120-21. Indeed, no consensus appears to exist amongst district courts in the Eighth Circuit regarding the propriety of allowing class members to opt out of a class via email. *Compare Prater v. Medicredit, Inc.*, No. 4:14-cv-0159, 2015 WL 4385682, at *3 (E.D. Mo. July 13, 2015) (allowing opt outs only via letter), *with Abarca v. Werner Enters., Inc.*, No. 8:14-cv-319-JFB-MDN, 2018 WL 4354953, at *2 (D. Neb. Sept. 12, 2018) (allowing opt outs via letter, email, and fax). This Court has, as of late, predominantly authorized letter-only opt out mechanisms in class action cases. *See, e.g.*, *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162 (W.D. Ark. Dec. 6, 2018), ECF No. 442; *Braden v. Foremost Insurance Company Grand Rapids, Michigan*, No. 4:15-cv-4114 (W.D. Ark. May 21, 2018), ECF No. 113.

The Court is not convinced that a letter-only opt-out mechanism would present an unnecessary hurdle that would deprive the class members of their due process rights to notice. Upon receiving notice, all class members would have "an opportunity to remove [themselves] from the class" by timely sending in a letter that complies with the opt-out requirements of the proposed Class Notice Plan. *Phillips*, 472 U.S. at 812. Therefore, Plaintiffs' proposed opt-out mechanism provides necessary due process to class members and an additional email opt-out component is

11

unnecessary in this case.[6]

Moreover, the Court notes that Plaintiffs' proposed Class Notice Plan includes—and Defendant has not objected to—a requirement that an opt-out request must contain the class member's own signature; no one else may request exclusion for the class member.[7] (ECF No. 168-1, p. 4). Defendant's request for an email opt-out component does not address this. Although a class member requesting exclusion via email could include an electronic signature, Defendant proposes no method of determining whether an opt-out request via email was indeed sent by the class member. *See* Fed. R. Civ. P. 23(c)(2) advisory committee's note to 2018 amendment (stating that any method for opting out must be "as convenient as possible, while protecting against unauthorized opt-out notices"). The Court finds that the absence of any proposed means by which the third-party administrator can verify that an opt-out email was sent by a class member (or in certain circumstances, their Legally Authorized Representative) further weighs against modifying the proposed Class Notice Plan to include opt-out requests via email.

For these reasons, the Court declines to modify this aspect of the proposed Class Notice Plan.

**C. Opt-Out Period**

Plaintiff's proposed opt-out period lasts for sixty days, beginning after the third-party administrator begins the mailing and publication notice process. Defendant objects, arguing that the proposed opt-out period is too short. To illustrate, Defendant poses various hypothetical situations in which a class member receives notice roughly a month into the notice process, such as seeing only the fourth and final newspaper publication or receiving the mailed individual notice

---

[6] In so holding, the Court expresses no opinion regarding the propriety of an email opt-out mechanism in general.

[7] Plaintiffs' Class Notice Plan carves out one exception to this rule, allowing a Legally Authorized Representative of a deceased or incapacitated class member to request exclusion from the class on the class member's behalf.

only after the first mailing attempt is returned as undeliverable. For each hypothetical situation, Defendant states that the class member would have just over a month to decide whether to opt out of the class, which Defendant argues is an inadequate period to make that decision and act accordingly. Defendant argues that the Court should instead place the opt-out deadline at least ninety days from the date of mailing class notice.

Plaintiffs argue that their proposed opt-out deadline comports with various deadlines set by the Court in other cases. Plaintiffs also argue that, even in Defendants' hypothetical situations, the class member receiving notice would have at least thirty days to decide whether to opt out, which provides sufficient due process.

Notice to a class must inform them that they may opt out of the class and notice must also indicate the time and manner for requesting exclusion. Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi). Class members must be given a "reasonable time" to opt out, with courts usually establishing "a period of thirty to sixty days (or longer if appropriate) following mailing or publication of notice." *Manual for Complex Litigation* § 21.321 (4th ed. 2019); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 240-41 (D.N.J. 1997) (collecting cases holding that an opt-out period of thirty to sixty days is appropriate).

Upon consideration, the Court agrees with Plaintiffs. The sixty day opt-out period in the proposed Class Notice Plan provides enough time for class members to decide whether to opt out of the class. Even in Defendant's hypothetical situation where a class member receives notice roughly a month after the initial mailing date, the class member would still have at least thirty days to decide whether to opt out and to mail a letter requesting exclusion if they so desire. Plaintiffs' proposed opt-out period satisfies the requirements of due process in light of the circumstances of this case. *See Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2007 WL 1046914, at *2 (W.D. Wash. 2007) (holding that thirty days is a sufficient opt-out period when class members are not

required to file claims, litigation is no more complex than a typical class action, and class members receive individual notice by mail).

As such, the Court declines to modify this aspect of the proposed Class Notice Plan.

**D. Policy Number and Electronic Format**

The proposed Class Notice Plan provides that Defendant shall compile, in an electronic format substantively similar to Plaintiffs' Exhibit D, the following information for all persons who meet the Class Definition from the period of May 1, 2010, through December 6, 2013: first and last name, last known mailing address, last known email address, policy and claim numbers, and date of covered loss. This information will be given to Plaintiffs' counsel, who will then provide it to the third-party administrator for further use in the notice process.

Defendant objects to the extent that it must provide each class member's policy number, and to the extent that it must compile the information in a format substantively similar to Plaintiffs' Exhibit D. Defendant states that it and Plaintiffs previously agreed that it would provide the above-listed information, with exception of policy numbers, and that Plaintiffs are now unnecessarily demanding the policy numbers.[8] Defendant also argues that it has already compiled the necessary data in a "reasonably usable spreadsheet format" and that it would be a waste of resources to require it to recompile the information in the specific column-and-row spreadsheet format that Plaintiffs request.

Plaintiffs argue that their request for policy numbers is not overly burdensome to Defendant, as it has already gathered the policy numbers when responding to discovery requests. Plaintiffs also state that Defendant could easily append the policy numbers to the existing data.

Plaintiffs have offered no argument or explanation as to why Defendant must provide the

---

[8] Defendant concedes that it has previously gathered the policy numbers for all relevant claims in response to interrogatories

requested data in the specific column-and-row spreadsheet format seen in Exhibit D to the proposed Class Notice Plan. Defendant has made no attempt to explain or illustrate what its "reasonably usable spreadsheet format" is or how it differs from Plaintiffs' Exhibit D, but the Court presumes that it is an electronic format that would be usable by the third-party administrator. Crediting this assumption, the Court sees no reason why Defendant must provide the data in the exact column-and-row spreadsheet format seen in Exhibit D. Plaintiffs' proposed Class Notice Plan should be modified to remove Exhibit D and any references thereto. The proposed Class Notice Plan should also be modified to require that Defendant provide the compiled data to Plaintiffs' counsel in an electronic spreadsheet format that may be used by the third-party administrator.

Changing course now, the Court finds that Defendant shall provide each class member's policy number in addition to the other requested information. Defendant provides no compelling argument why it cannot also provide the policy numbers and, in light of Defendant's concession that it already gathered the policy numbers to respond to discovery requests, the Court agrees that it will be a relatively simple task for Defendant to add the policy numbers to the existing information. Thus, the Court declines to modify this particular aspect of the proposed Class Notice Plan.

### E. Cost of Notice Plan

The proposed Class Notice Plan does not specify who will bear the cost of the notice process. Defendant objects to this omission and asks the Court to modify the plan to specify that Plaintiffs shall bear the entire cost of the notice process. Plaintiffs state that they are willing to pay for the notice process on the front end, to be assessed against Defendant as costs later if Plaintiffs ultimately prevail.

"The usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen*,

417 U.S. at 178. However, "some district courts have shifted notice costs once the defendant's liability has been established." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-cv-04321-NKL, 2014 WL 1955107, at *8 (W.D. Mo. May 14, 2014); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978) (stating that district courts have some discretion in allocating notice-plan costs in certain circumstances); William B. Rubenstein, *3 Newberg on Class Actions* § 8:33 (5th ed. 2018) (describing four situations where district courts have shifted notice costs to the defendant: (1) where costs would be substantially reduced if defendant issued the notice, (2) when there is an existing fiduciary relationship between the parties, (3) when the defendant is the party requesting certification, and (4) when there has been some preliminary finding of the defendant's liability).

In this case, the Court sees no circumstance that warrants shifting notice costs onto Defendant. Thus, the Court will adhere to the "usual rule" articulated in *Eisen* and require Plaintiffs to initially bear the cost of notice to the class.[9] Plaintiffs' proposed Class Notice Plan should be revised to reflect this.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Opposed Motion for Order Approving Class Notice Plan and Class Notice (ECF No. 168) should be and hereby is **GRANTED IN PART AND DENIED IN PART**.

The Court approves the form and substance of Plaintiffs' proposed Class Notice Plan and its attendant exhibits (ECF No. 168-1), subject to the implementation of the revisions outlined in this order. The Court finds that, as will be revised, Plaintiffs' proposed Class Notice Plan provides the best notice that is practicable under the circumstances and provides for individual notice to all

---

[9] If Plaintiffs ultimately prevail in this case, the Court will entertain an appropriate motion regarding costs.

class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The Court further finds that the exhibits, as will be revised, clearly and concisely state the requisite matters set forth in Rule 23(c)(2)(B)(i)-(vii) in plain, easily understood language. Thus, the proposed Class Notice Plan, as will be revised, meets or exceeds the requirements for due process.

Plaintiffs are **DIRECTED** to remove from the Class Notice Plan and exhibits all references to former Plaintiff Dennington and former Defendant State Farm General Insurance Company, and to change all instances of "Defendants" to "Defendant." Plaintiffs are also **DIRECTED** to remove Exhibit D and any references thereto from the Class Notice Plan, and to revise the Class Notice Plan to require that Defendant provide the identifying data on class members in an electronic spreadsheet format that may be used by the third-party administrator. Plaintiffs are further **DIRECTED** to revise the Class Notice Plan to state that Plaintiffs will bear the initial cost of providing notice to the class.

Plaintiffs shall file a revised Class Notice Plan and exhibits **on or before June 25, 2019**. If the revised plan accurately incorporates the changes outlined in this order,[10] the Court will then enter an order appointing a third-party administrator and directing the parties, their counsel, and the third-party administrator to effectuate the terms of the revised Class Notice Plan.

**IT IS SO ORDERED**, this 10th day of June, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge

---

[10] The changes are not complex and are clearly outlined in this order. The Court has faith that the parties can mutually agree on and implement the necessary revisions without further need for the Court's attention to the matter.