**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

JAMES STUART and )
CAREDA L. HOOD, )
individually and on behalf )
of all others similarly situated, )
 )
     *Plaintiffs*, )
 )
v. )     No. 14-cv-04001-SOH
 )
STATE FARM FIRE AND CASUALTY )
COMPANY, )
 )
     *Defendant*. )

**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND**
**COSTS RELATED TO THE STIPULATION OF SETTLEMENT AND**
<u>**REQUEST FOR FEE AWARD TO CLASS REPRESENTATIVES**</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 2

III.  ARGUMENT IN SUPPORT OF REQUESTED FEES AND EXPENSES ...................... 8

      A.    There Was No Collusion in the Negotiation of the Fee .......................... 9

      B.    Federal and Arkansas Jurisprudence Supports a Percentage of the
            Benefit Award ......................................................................................... 10

      C.    Courts Include the Attorney Fees in Calculating the Common Class Benefit
            from Which the Fees Are Awarded ........................................................ 14

      D.    The Fee and Expense Request of Less Than 25% of the Common Class
            Benefit is Fair and Reasonable and Should be Awarded in This Case ........ 15

            1.    The fee customarily charged in the locality for similar legal services ..... 18

            2.    The amount involved in the case and the results obtained ...................... 20

            3.    The experience and ability of the attorneys ............................................ 21

            4.    The novelty and difficulty of the issues involved ................................... 22

            5.    Whether the fee is fixed or contingent .................................................... 22

            6.    The time and labor required to perform the legal service properly ......... 24

            7.    The likelihood, if apparent to the client, that the acceptance of the
                  particular employment will preclude other employment by the lawyer ... 26

            8.    The time limitations imposed upon the client or by the circumstances .... 26

            9.    Summary of *Chrisco/Johnson* factors .................................................... 26

IV.   THE REACTION OF THE CLASS REPRESENTATIVES AND THE CLASS TO
      DATE CONFIRMS THAT THE REQUESTED FEE IS REASONABLE ..................... 27

V.    CLASS COUNSEL REQUEST THAT THE COURT GRANT INCENTIVE
      AWARDS TO THE CLASS REPRESENTATIVES ............................................... 27

VI.   CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9-M Corp, Inc. v. Sprint Commc'ns Co., L.P.*,
   2012 WL 5495905 (D. Minn. 2012) ....................................................................11

*Adams v. Cameron Mut. Ins. Co.*,
   2013 Ark. 475, 430 S.W.3d 675 (Ark. 2013) .........................................................2

*Allapatah Serv., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...............................................................27

*In re Ampicillin Antitrust Litig.*,
   81 F.R.D. 395 (D.D.C. 1978) ................................................................................9

*In re Apple Computer Sec. Litig.*,
   [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,252
   (N.D. Cal. Sept. 6, 1991) ....................................................................................23

*Ballard v. Martin*,
   349 Ark. 564, 79 S.W.3d 838 (2002) .............................................................10, 20

*Basham v. Am. Nat. County Mut. Ins. Co.*,
   979 F. Supp. 2d 883 (W.D. Ark. Oct. 23, 2013) ............................................. 19-20

*In re Black Farmers Discrim. Litig.*,
   953 F. Supp. 2d 82 (D.D.C. 2013) ......................................................................25

*Blum v. Stenson*,
   465 U.S. 886 (1984) .............................................................................................11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................................11, 16

*Butt v. Evans*,
   351 Ark. 566, 98 S.W.3d 1 (2003) ................................................13, 17, 22, 24

*Caligiuri v. Symantec Corp.*,
   855 F. 3d 860 (8th Cir. 2017) .............................................................................15

*Central RR & Banking Co. v. Pettus*,
   113 U.S. 116 (1885) .............................................................................................11

*Chrisco v. Sun Indus., Inc.*,
   304 Ark. 227, 800 S.W.2d 717 (1990) ...........................................................17, 18

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)...................................................................10

*Dennington v. State Farm Fire and Cas. Co.,*
    2016 WL 11542188 (W.D. Ark. Aug. 24, 2016)..................................21

*Doss v. American Family Home Ins. Co.,*
    47 F. Supp. 836 (W.D. Ark. 2014)......................................................19

*Eisenstadt v. Centel Corp.,*
    113 F.3d 738 (7th Cir. 1997) ...............................................................23

*FutureFuel Chemical Co. v. Lonza, Inc.,*
    756 F.3d 641 (8th Cir. 2014) ...............................................................10

*Gascho v. Global Fitness Holdings, LLC,*
    822 F.3d 269 (6th Cir. 2016) ...............................................................16

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...............................................................12

*Hamilton v. Suntrust Mortg. Inc.,*
    2014 WL 5419507 (S.D. Fla. Oct. 24, 2014).......................................16

*In re Harrah's Entm't, Inc. Sec. Litig.,*
    1998 WL 832574 (E.D. La. 1998) .......................................................25

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).............................................................................20

*Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.,*
    729 F.3d 846 (8th Cir. 2013) ...............................................................10

*In re Iowa Ready-Mix Concrete Antitrust Litig.,*
    2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) .....................................18

*Jack Faucett Assocs., Inc. v. Am. Tele. & Tele. Co.,*
    1986-1 Trade Cases 66,904 (D.D.C. 1985) .........................................20

*Johnson v. Ga. Highway Express,*
    488 F.2d 714 (5th Cir. 1974) .................................................16, 17, 18

*Johnston v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996) ...............................................8, 9, 11, 14

*In re King Res. Co. Sec. Litig.,*
    420 F. Supp. 610 (D. Colo. 1976).................................................21, 24

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ........................................................12

*Knowles v. Standard Fire Ins. Co.*,
2013 WL 3968490 (W.D. Ark. 2013) ..............................................19

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ..................................................9

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ...........................................................16

*Michels v. Phoenix Home Life Mut. Ins. Co.*,
1997 WL 1161145 (N.Y. Sup. Ct. 1997) .........................................10

*In re Monosodium Glutamate Antitrust Litig.*,
2003 WL 297276 (D. Minn. Feb. 6, 2003) .......................................23

*Nelson v. Mead Johnson & Johnson Co.*,
484 F. App'x 429 (11th Cir. 2012) ..................................................10

*In re NuvaRing Prod. Liab. Litig.*,
2014 U.S. Dist. LEXIS 176228 (E.D. Mo. Dec. 16, 2014), *adopted by* 2014
U.S. Dist. LEXIS 175299 (E.D. Mo. Dec. 18, 2014) ..........................12

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ....................................................2, 11

*Poertner v. Gillette Co.*,
618 F. App'x 624 (11th Cir. 2015) ..................................................16

*Powell v. Henry*,
267 Ark. 484, 592 S.W.2d 107 (1980)...............................13, 17, 20, 25

*In re Prudential-Bache Sec. Litig.*,
1994 WL 150742 (E.D. La. 1994) ...................................................12

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)......................................................27

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................23

*Shaw v. Toshiba America Info. Sys.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000)....................................19, 21, 25

*Simmons v. Friday*,
190 F.2d 849 (8th Cir. 1988) ..........................................................12

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................................9

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)..........................................................................................11

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)...........................................................................12

*Teachers' Ret. Sys.of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................................23

*In re Terra-Drill P'ships Sec. Litig.*,
  733 F. Supp. 1127 (S.D. Tex. 1990)..................................................................20

*Trans World Airlines, Inc. v. Hughes*,
  312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971),
  *rev'd*, 409 U.S. 363 (1973) .......................................................................... 23-24

*Trustees v. Greenough*,
  105 U.S. 527 (1881).........................................................................................11

*In re U.S. Bancorp Litig.*,
  291 F.3d 1035 (8th Cir. 2002) ..........................................................2, 15, 27, 28

*In re Union Carbide Consumer Prod. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) .....................................................................9

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)................19

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ...................................................................16, 19

*Williams v. MGM–Pathé Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ..........................................................................16

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)......................................................... *passim*

*Yaeger v. Subaru of Am., Inc.*,
  2016 WL 4547126 (D.N.J. Aug. 31, 2016) .....................................................8, 14

*Yarrington v. Solvay Pharm., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. 2010)..........................................15, 16, 19, 21

**Statutes**

Ark. Code Ann. § 23-79-208 ..............................................................................15

ARK. CODE ANN. § 23-79-208(a)(1) .............................................................................10

**Other Authorities**

FED. R. CIV. P. 23(h) ....................................................................................................8

Denise Martin, *et al*, Nat'l Econ. Research Ass'n (NERA), RECENT TRENDS IV:
    WHAT EXPLAINS FILINGS AND SETTLEMENTS IN SHAREHOLDER CLASS
    ACTIONS? (1996) ..................................................................................................19

Monique Lapointe, *Attorneys Fees in Common Fund Actions*, 59 FORDHAM L.
    REV. 843, 864 (1991) ...........................................................................................12

Prof. Charles Silver, *Class Actions In The Gulf South Symposium: Due Process
    and the Lodestar Method*, 74 TUL. L. REV. 1809, 1819 (June 2000).....................13

*Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108
    F.R.D. 237, 242 (October 8, 1985) ........................................................................11

1 Alba Conte, ATTORNEY FEE AWARDS §2.02 (2d ed. 1993) ........................................11

3 NEWBERG ON CLASS ACTIONS, §12.03............................................................................9

**TO THE HONORABLE SUSAN O. HICKEY, UNITED STATES DISTRICT JUDGE:**

Class Counsel respectfully submit this Motion for Attorneys' Fees and Costs Related to the Stipulation of Settlement and Request for Fee Award to Class Representatives, and would respectfully show the Court as follows:

## I.   <u>INTRODUCTION</u>

1.      This is a proposed class action settlement.  Plaintiffs James Stuart and Careda L. Hood ("Plaintiffs" or "Class Representatives") allege that Defendant State Farm Fire and Casualty Co. ("State Farm" or "Defendant") failed to properly account for and pay all amounts due for labor when paying homeowner's insurance claims and that, as a result of such failure, Plaintiffs and other Class Members were deprived of the full amount owed on their claims.

2.      Class Counsel undertook significant litigation efforts to prosecute this action against State Farm, including the completion of fact and expert discovery, the filing of a motion for summary judgment (which was pending at the time the settlement was reached), and the filing of a class certification motion which was granted by this Court and affirmed by the Eighth Circuit Court of Appeals.

3.      The Stipulation of Settlement (the "Settlement") is an outstanding result for Class Members.  ECF No. 245-1.  Plaintiffs moved for preliminary approval of the Settlement on December 10, 2019.  ECF No. 245.  The motion was granted on January 3, 2020.  ECF No. 250. The Settlement was achieved because of the skill, tenacity, and effective advocacy of Class Counsel.

4.      Class Counsel respectfully submit this motion seeking an award of $2,833,333.33 for attorneys' fees, which constitutes 33-1/3% of the amount to be paid to the Class ($8,500,000) (Settlement, ¶ 44), and represents just 24% of the total monetary benefit (approximately $11,757,954.06) achieved for the common benefit of the Class.  The requested award is fair,

reasonable, commensurate with the result obtained for Class Members, and consistent with Eighth Circuit precedent. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this, *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999), and we find no abuse of discretion in the district court's awarding 36% to class counsel who obtained significant monetary relief on behalf of the class."). Class Counsel's motion also seeks the reimbursement of $400,000 in litigation costs and $24,620.73 for the costs incurred in providing notice to Class Members of this Court's contested class certification.

## II.  FACTUAL BACKGROUND

5.    This action involves allegations that State Farm breached the terms of the homeowners' insurance policies it entered into with Plaintiffs and other Class Members by wrongfully depreciating labor costs when adjusting property loss claims in violation of Arkansas law. Below is a brief procedural history.

6.    On November 21, 2013, the Supreme Court of Arkansas held in *Adams v. Cameron Mutual Insurance Co.* that "the costs of labor may not be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term 'actual cash value.'" 2013 Ark. 475, at 7, 430 S.W.3d 675, 679 (Ark. 2014). The Supreme Court of Arkansas explained that, unlike materials, labor is not depreciable. *See id.*, 2013 Ark. 475, at 6, 430 S.W.3d at 678 ("The very idea of depreciating the value of labor is illogical.") (citation and internal quotation marks omitted).

7.    On November 21, 2013, Jeff Dennington filed a class action complaint in the Circuit Court of Miller County, Arkansas, asserting breach of contract and unjust enrichment claims against State Farm related to its depreciation of labor costs. ECF No. 1, ¶ 1. This action was removed to the United States District Court for the Western District of Arkansas on January

2

2, 2014.  ECF No. 1.  On September 16, 2014, Dennington and James Stuart filed their First Amended Class Action Complaint, again asserting breach of contract and unjust enrichment claims against State Farm related to its depreciation of labor costs.  ECF No. 39.  On June 1, 2015, Dennington and Stuart filed a Second Amended Class Action Complaint ("SAC"), which added Careda L. Hood as a plaintiff, again asserting breach of contract and unjust enrichment claims against State Farm related to its depreciation of labor costs.  ECF No. 69.

8.      On June 15, 2015, State Farm moved to dismiss the SAC in its entirety.  ECF No. 71.  On March 14, 2016, the Court granted in part and denied in part State Farm's motion to dismiss, sustaining Plaintiffs' claims but dismissing Dennington's claims as previously released. ECF No. 110.

9.      On December 2, 2015, Plaintiffs moved to certify the following class:

All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred between November 21, 2008 and December 6, 2013, where the cost of labor was depreciated. Excluded from the class are: (1) all persons and entities that received payment from State Farm in the full amount of insurance shown on the declarations page; (2) State Farm and its affiliates, officers and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

ECF No. 83 at 10.

10.     The class on whose behalf Plaintiffs brought this suit includes insureds who purchased both "actual cash value" ("ACV") policies and "replacement cost value" ("RCV") policies from State Farm.  ECF No. 159-1 at 2-3.  Insureds covered under ACV and RCV policies are similarly situated, as for covered losses under RCV policies, State Farm's practice was to make an initial ACV payment to an insured (which deducted depreciation), followed by a second RCV payment (which included previously-deducted depreciation) after the insured repaired the covered property.  ECF No. 159-1 at 2-3, 7.  Therefore, an insured who is covered under an RCV policy,

but who did not recover any of the initially withheld labor depreciation and chose not to complete his or her repairs, is treated the same as an insured covered under an ACV policy.  ECF No. 159-1 at 8-9.

11.     On January 19, 2016, State Farm opposed Plaintiffs' motion for class certification. ECF No. 87.  On August 24, 2016, the Court granted Plaintiffs' motion for class certification.  ECF No. 142.

12.     On September 7, 2016, pursuant to Federal Rule of Civil Procedure ("Rule") 23(f), State Farm petitioned the United States Court of Appeals for the Eighth Circuit for permission to appeal the Court's order granting class certification ("Rule 23(f) Petition").  ECF Nos. 144; 146-1.  The Eighth Circuit granted State Farm's Rule 23(f) Petition on September 29, 2016.  ECF No. 148.  On January 25, 2017, the Court stayed all proceedings pending resolution of State Farm's Rule 23(f) Petition.  ECF No. 156.

13.     On December 6, 2018, the Eighth Circuit affirmed the Court's order granting class certification and modified the definition of the Class to exclude class members to a class settlement in *Chivers v. State Farm Fire & Casualty Co.*, No. CV-2010-251-3 (Ark. Cir. Ct.).  ECF No. 159-1.

14.     The Court granted an order consistent with the Eighth Circuit's opinion on February 6, 2019.  ECF No. 161.  The Court lifted the stay of proceedings the same day.  ECF No. 160.

15.     On February 11, 2019, the Court modified the class definition to conform to the Eighth Circuit's order, as follows:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred between May 1, 2010 and December 6, 2013, where the cost of labor was depreciated.  Excluded from the Class are: (1) all persons and entities that received payment from State Farm in the full amount of insurance shown on the declarations

page; (2) State Farm and its affiliates, officers and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

ECF No. 163 at 2.

16.     The parties conducted discovery throughout 2019.  On September 24, 2019—approximately two months before the Court-ordered fact discovery cutoff of November 22, 2019—Plaintiffs filed a motion for summary judgement on liability and damages.  ECF Nos. 224, 225.

17.     Shortly thereafter, the parties engaged in settlement discussions.  These discussions culminated with a settlement conference on November 5, 2019, before the Honorable Barry Bryant, Magistrate Judge of this Court, which yielded an agreement among the parties to resolve the litigation.  ECF No. 244.

18.     The Settlement Agreement was not arrived at until after Class Counsel had (1) conducted an extensive and comprehensive pre-suit investigation relating to the events and transactions underlying Plaintiffs' and the Class's claims; (2) reviewed and analyzed voluminous amounts of publicly-available documents; (3) consulted with experts about the novel and difficult issues raised in this action; (4) thoroughly researched the law and facts pertinent to Plaintiffs' claims and the defenses raised by State Farm, and assessed the risks of prevailing on each of the respective claims on pre-trial motions and at trial; (5) conducted fact discovery, including multiple rounds of written discovery and numerous fact and expert witness depositions; (6) filed a motion for summary judgment, which was pending at the time the parties reached an agreement to resolve this litigation, and (7) thoroughly evaluated the risks of ongoing litigation.  In addition, Class Counsel relied on their previous experience and innumerable man-hours in other insurance class action litigations.  ¶ 8.[1]

_____

[1]      References to "¶ __" are to the Accompanying Declaration of Matt Keil, Esq.

19.     This action clearly required considerable skill and experience to achieve the Settlement before the Court.  The case required investigation of complex factual circumstances, the development of creative legal theories, and the skill to respond to a host of legal defenses.  State Farm was represented by prominent and well-respected law firms, Riley Safer Homes & Cancila LLP and Munson, Rowlett, Moore & Boone, P.A., who ably presented a thorough and vigorous defense of Plaintiffs' claims.  Throughout the case, State Farm maintained that Plaintiffs' substantive and class allegations were wholly without merit.  There was a risk that Defendants would be able to decertify the Class, and that Plaintiffs would be unable to establish liability and would recover nothing, or would prevail only after several additional years consumed by trial, post-trial motions, and inevitable appeals.  Considering these risks and the significant recovery that Class Counsel was nonetheless able to obtain for the Class, the fee award requested is fair and reasonable.

20.     Indeed, Class Counsel undertook this action on a contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the litigation would yield no recovery and leave them uncompensated.  It would not have been economically prudent or feasible if counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates.  Class Counsel's willingness to prosecute this action on a contingent fee basis necessitated advancing and diverting the costs, manpower and resources expended on this action from other cases.

21.     In the face of these obstacles, Class Counsel succeeded in securing a remarkable recovery for the Class.  The proposed Settlement provides that State Farm shall pay the following amounts to three distinct categories of Class Members:

1.     **Group A**: Claimants from whom estimated labor depreciation was initially deducted and not subsequently recovered, and who did not

complete repairs in full, will receive payment of 100% of the estimated unpaid labor depreciation, plus interest at 5.25% per annum.

2. **Group B**: Claimants from whom estimated labor depreciation was initially deducted, and who either recovered partially the initially deducted labor depreciation and/or completed repairs in full, will receive a payment of 75% of the estimated unpaid labor depreciation, plus interest at 5.25% per annum.

3. **Group C**: Claimants from whom estimated labor depreciation was initially deducted, and who subsequently recovered all depreciation, shall receive a payment of 10% of the estimated labor depreciation initially withheld but later paid in full.

Settlement, ¶ 31.

22. The reasons for this tiered compensation model is as follows. State Farm has maintained throughout this case that, pursuant to a policy provision purporting to cap liability, Class Members who completed repairs to their damaged property and received the full cost of those repairs from State Farm are barred from recovering any further payments. In recognition of State Farm's argument—which is contested by Plaintiffs—the parties have agreed, for settlement purposes, to acknowledge that the Class Members entitled to recovery under Group B above face an argument not applicable to Class Members in Group A.[2] Accordingly, the Settlement assigns a lesser recovery to Class Members who fall into Group B, as compared to Group A. ¶ 9.

23. The Class Members in Group C are those insureds who subsequently received all of their withheld labor costs from State Farm, but nonetheless are entitled to recover something under the Settlement in recognition of the Arkansas Code's 12% penalty for late payment of valid insurance claims. Such insureds will receive 10% of the withheld labor depreciation—which is *83.3%* of their maximum damages under the statute. ¶ 10.

---

[2] Plaintiffs have always maintained that State Farm's obligation to pay full actual cash value at the time of loss (i.e., with no depreciation of labor) does not turn on whether the insured was able to complete the repairs to his or her property for less than the deficient ACV payment.

24.     The value of the Settlement (inclusive of class benefits and attorneys' fees and expenses) is **$11,757,954.06**.[3]  This is comprised of $8,500,000 of settlement payments to Class Members and $3,257,954.06 in attorneys' fees and expenses (including (i) $2,833,333.33 in attorneys' fees, (ii) $400,000 in litigation costs, and (iii) $24,620.73 to reimburse Class Counsel for the costs incurred in providing notice of this Court's class certification order).  Settlement, ¶¶ 44, 65(i).  In addition to the foregoing amounts, State Farm has agreed to pay an incentive award of $9,500 to each Plaintiff for his and her service as Class Representatives.  Settlement, ¶¶ 36, 65(i).

25.     Class Counsel obtained a substantial recovery for the Class and seek to recover fees and expenses commensurate with this excellent result.  Plaintiffs submit that the requested $3,257,954.06 for fees and expenses is fair and reasonable when considered under applicable legal standards, and is particularly appropriate here in view of the substantial risks attendant in bringing and pursuing this action and the significant results achieved.

## III.     ARGUMENT IN SUPPORT OF REQUESTED FEES AND EXPENSES

26.     Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" pursuant to a motion under Rule 54(d)(2).  FED. R. CIV. P. 23(h).  As noted in the Keil Declaration (Ex. 1), Class Counsel are comprised of experienced and engaged law firms.  Each firm has taken an active role in achieving this Settlement and preparing for the Final Approval Hearing.  ¶¶ 16, 17.  Therefore, Class Counsel jointly petition the Court for an award of $3,257,954.06, comprised

---

[3]     Courts including the Eighth Circuit have consistently held that the fees paid to class counsel for their service to the class are "best viewed as an aspect of the class' recovery."  *Johnston v. Comerica Mortg. Co.*, 83 F.3d 241, 245-46 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal."); *see also Yaeger v. Subaru of Am., Inc.*, 2016 WL 4547126, at *3 & n.3 (D.N.J. Aug. 31, 2016); discussion in § III.C, *infra*.

of: (i) $2,833,333.33 in attorneys' fees, (ii) $400,000 in litigation costs, and (iii) $24,620.73 to reimburse Class Counsel for the costs incurred in providing notice of this Court's class certification order.[4]

27.     Class Counsel seek an award of fees in this case based on a percentage of the common monetary benefit obtained for the Class.   Under Eighth Circuit law, the payment of attorneys' fees itself is considered a benefit to the Settlement Class.  *See, e.g.*, *Johnston,* 83 F.3d at 245 (8th Cir. 1996).  When combined with the amount paid to Class Members, the total monetary benefit is $11,757,954.06—an amount that well exceeds 100% of the actual damages estimated to have been incurred by the Class.  The attorneys' fees of $2,833,333.33 represent 24% of the total monetary benefit achieved for the common benefit of the Class.

### A.     There Was No Collusion in the Negotiation of the Fee

28.     There was no collusion in the negotiation of the attorney fee provision in this Settlement.  The attorney fee was not negotiated until after the substantive terms of the settlement had been agreed upon.  ¶ 12.  This is the standard and ethical manner of negotiating the settlement and fee issues.  *See* 3 NEWBERG ON CLASS ACTIONS, § 12.03.  Where it is demonstrated that the fee was not negotiated until after the parties had agreed on the substantive terms of the settlement

---

[4]      The $400,000 in requested litigation expenses include the expenses Class Counsel incurred for expert and consulting fees, lodging and transportation for court hearings and meetings, legal research costs and electronic discovery hosting costs.  ¶ 11.  Class Counsel have an internal agreement as to how the fee and cost award should be divided among the various firms, and do not request the Court to take part in the ultimate division of any fee awarded.  This procedure has received approval in numerous class actions, as it would cast an unseemly and time-consuming burden upon the Court were each firm to file competing and contentious fee applications.  *See, e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *In re Union Carbide Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 162 (S.D.N.Y. 1989) ("Plaintiffs' counsel have agreed to allocate the aggregate fees awarded among themselves in relation to the amount of work and the responsibilities undertaken, the risks sustained, and the relative contributions of the various law firms towards the settlement"); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 682 (M.D. Ala. 1988); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C. 1978).

for the class, courts have extended great deference to the fee that the defendant has agreed to pay under the settlement.  *See, e.g.*, *Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 WL 1161145, at *30 (N.Y. Sup. Ct. Jan. 7, 1997).

29.     Moreover, the attorney fee provision is the product of extensive arms' length negotiations mediated by a federal magistrate judge, Judge Bryant, providing further evidence that no collusion occurred.  A proposed settlement that is the result of arm's length negotiations through a neutral mediator is presumptively fair and reasonable.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *accord Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012).

### B.     Federal and Arkansas Jurisprudence Supports a Percentage of the Benefit Award

30.     In a diversity case based on a state law claim, a federal court should apply the law of the forum state in awarding attorneys' fees.  *See FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 649 (8th Cir. 2014) ("In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies."); *accord Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 852 (8th Cir. 2013), *as corrected* (Sept. 9, 2013).  Here, attorneys' fees are available by Arkansas statute.  ARK. CODE ANN. § 23-79-208 (a)(1) ("In all cases in which loss occurs and the . . . property . . . insurance company . . . liable therefor shall fail to pay the losses within the time specified in the policy after demand is made, the . . . corporation . . . shall be liable to pay the holder of the policy . . . in addition to the amount of the loss . . . all reasonable attorney's fees for the prosecution and collection of the loss.").

31.     Arkansas courts have adopted the Eighth Circuit's standards for evaluating class settlements under Arkansas Rule of Civil Procedure 23.  *See Ballard v. Martin*, 349 Ark. 564, 575,

79 S.W.3d 838, 845 (2002) (adopting federal factors).   What has developed is a consistent approach in the adoption of percentage fee awards where a specific economic benefit, such as the one obtained in this settlement, can be ascertained.

32.     In the Eighth Circuit, the two approaches to fee awards that are utilized are the "percentage of the benefit" and the "lodestar methodology." *Johnston*, 83 F.3d at 244-45.   The percentage of the benefit, or percentage of the fund, approach "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.*   "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Petrovic,* 200 F.3d at 1157; *accord 9-M Corp, Inc. v. Sprint Commc'ns Co., L.P.*, 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012) (same).

33.     The United States Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage of the benefit basis.   *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527, 532 (1881); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, ATTORNEY FEE AWARDS § 2.02, at 31-32 (2d ed. 1993) (same).

34.     The Eighth Circuit strongly favors the percentage of the benefit method when awarding attorney fees in common fund cases.  *See In re NuvaRing Prod. Liab. Litig.* 2014 U.S. Dist. LEXIS 176228, at \*300 (E.D. Mo. Dec. 16, 2014), *adopted by* 2014 U.S. Dist. LEXIS 175299 (E.D. Mo. Dec. 18, 2014) (use of percentage of the benefit method in common fund cases "is not only approved, but also 'well established'") (citations omitted); *see also Simmons v. Friday*, 190 F.2d 849 (8th Cir. 1988).   Other circuits, such as the Tenth Circuit, have also approved the percentage method for awarding attorney fees in common fund cases as opposed to the lodestar approach.  *See, e.g.*, *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) ("[T]he *more recent* trend has been toward utilizing the percentage method in common fund cases") (emphasis added).  One observer has characterized this trend as a "stampede" toward the percentage method.  *See* Monique Lapointe, *Attorneys Fees in Common Fund Actions*, 59 FORDHAM L. REV. 843, 864 (1991).

35.     The percentage method is consistent with—and indeed is intended to mirror—practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.[5]  *See In re Prudential-Bache Energy Income P'ship Sec. Litig.*, 1994 WL 150742, at \*2 (E.D. La. Apr. 13, 1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993) (percentage method "more clearly reflects the marketplace").   It also

---

[5]     As stated by the Seventh Circuit:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment of more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants . . . . [¶] At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

*Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986).

provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time necessary under the circumstances.[6]

36.     The Arkansas approach to percentage of the common benefit fee awards is consistent with the federal approach.  Indeed, the Arkansas Supreme Court has held that "the allowance of attorneys' fees from a common fund established or augmented through the efforts of the attorneys to whom the fee is allowed is a well-recognized practice and is proper."  *Powell v. Henry*, 267 Ark. 484, 486-87, 592 S.W.2d 107, 109 (Ark. 1980); *see also Butt v. Evans*, 351 Ark. 566, 585, 98 S.W.3d 1, 12 (Ark. 2003) (providing for a "reasonable part of the recovery of the class members" to be apportioned as attorneys' fees).

---

[6]     One of the nation's foremost scholars in the field of class actions and attorney's fees has concluded that, among its many other benefits, the contingent percentage method is far superior to the lodestar method in aligning the interests of class counsel with the interests of absent class members:

> ***The consensus is that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs . . . . In view of this, it is as clear as it possibly can be that judges should <u>not</u> apply the lodestar method in common fund class actions.***  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Prof. Charles Silver, *Class Actions In The Gulf South Symposium: Due Process and the Lodestar Method*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (emphasis added).

**C.      Courts Include the Attorney Fees in Calculating the Common Class Benefit from Which the Fees Are Awarded**

37.     The percentage method has also been approved by the Eighth Circuit where the fees are to be paid directly by the defendant, as opposed to coming out of the recovery by the class, as is the case here.  *See Johnston*, 83 F.3d at 245-46.  In *Johnston*, "[t]he district court concluded that because the attorney fees were to be paid by the defendants separate and apart from the settlement funds, the fees did not come from a 'common fund' belonging to the plaintiffs, and thus the percentage of the benefit approach was inappropriate."  *Id*.  The Eighth Circuit "disagree[d]":

> Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source.  ***The award to the class and the agreement on attorney fees represent a package deal.  Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery*** . . . . [¶] Accordingly, the direct payment of attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis in these cases.

*Id.* at 245-46 (emphasis added); *see also Yaeger*, 2016 WL 4547126, at *3 & n.3 (explaining that attorney's fees are a component of the total benefit conferred on the class: "The recovery can be analogized to a common fund where the fund consists of $5 million in class benefits and $1.5 million in class attorney's fees, for a total recovery of $6.5 million.  Where the numerator is $1.5 million and the denominator is $6.5 million, the fee award would represent approximately 23% of the common fund.").  Therefore, the attorneys' fees themselves are considered part of the common benefit accruing to the Class under the Settlement Agreement.

38.     Under this rationale, the structure of the Settlement before the Court effectively creates a "common fund" that includes (i) the cash payment benefit, (ii) the payment of attorneys' fees and expenses, (iii) the payment of the notice administration costs, and (iv) the payment of the incentive awards.

**D.     The Fee and Expense Request of Less Than 25% of the Common Class
Benefit is Fair and Reasonable and Should be Awarded in This Case**

39.     Here, a statute and the Stipulation of Settlement support the award of fees.  *See*
ARK. CODE ANN. § 23-79-208; Settlement, ¶¶ 44-46.   Additionally, Class Members have been
mailed individual notice informing them of the award of fees, costs, and expenses sought by
Plaintiffs and Class Counsel.  When compared to the meaningful benefit obtained for the Class,
the requested award is fair and reasonable and should be approved.

40.     Through Class Counsel's efforts, the Settlement makes available an estimated
aggregate of $8,500,000 to the Class.  The settlement funds include a 100% recovery of claimed
damages for Class Members in Group A plus interest at 5.25% per annum; a 75% recovery of
claimed damages for Class Members in Group 2 plus interest at 5.25% per annum; and an 83.33%
recovery of claimed damages for Class Members in Group 3.[7]  Therefore, under the percentage of
the common fund approach, Class Counsel is entitled to a reasonable percentage of the common
fund.  Class Counsel requests a joint award of $2,833,333.33 for attorneys' fees.  The requested
amount represents just 24% of the total common benefit obtained for the Class.

41.     In the Eighth Circuit, courts have routinely awarded attorney fees ranging from
25% to 36% of a common fund under the percentage method.  *See, e.g.*, *Caligiuri v. Symantec
Corp.*, 855 F. 3d 860 (8th Cir. 2017); *U.S. Bancorp*, 291 F.3d at 1038; *Yarrington v. Solvay Pharm.,
Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010); *In re Xcel Energy, Inc. Sec., Derivative &
ERISA Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005).

---

[7]     Group 3 contains those insureds who subsequently received all of their withheld labor costs from State Farm,
but nonetheless are entitled to recover something under the Settlement in recognition of the Arkansas Code's 12%
penalty for late payment of valid insurance claims. Such insureds will receive 10% of the withheld labor depreciation,
or 83.33% of their maximum damages under the statute.

42.     The U.S. Supreme Court recognizes that a class member's "right to share the harvest of the suit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel." *Boeing*, 444 U.S. at 480 (emphasis added).  Consequently, "an allocation of fees by percentage should … be awarded on the basis of the total funds made available, *whether claimed or not*." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (emphasis added); *accord Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 285 (6th Cir. 2016); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999); *Hamilton v. Suntrust Mortg. Inc.*, 2014 WL 5419507, at \*4-6 (S.D. Fla. Oct. 24, 2014); *Williams v. MGM-Pathé Commc'ns Co.*, 129 F.3d 1026, 1026-27 (9th Cir. 1997).

43.     While no express test has been adopted, courts in the Eighth Circuit have relied upon multi-factor tests of other Circuits in determining the reasonableness of the fee under percentage of the benefit method. *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1061-62; *Xcel Energy*, 364 F. Supp. 2d at 993.  These reasonableness factors are adopted from *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* Factors").  The *Johnson* factors are: (1) "[t]he time and labor required"; (2) "[t]he novelty and difficulty of the questions"; (3) "[t]he skill requisite to perform the legal service properly"; (4) "[t]he preclusion of other employment by the attorney due to acceptance of the case"; (5) "[t]he customary fee for similar work in the community"; (6) "[w]hether the fee is fixed or contingent"; (7) "[t]ime limitations imposed by the client or the circumstances"; (8) "[t]he amount involved and the results obtained"; (9) "[t]he experience, reputation, and ability of the attorneys"; (10) "[t]he 'undesirability' of the case"; (11) "[t]he nature and length of the professional relationship with the client"; and (12) "[a]wards in similar cases." *Id.* at 717-20.  Many of the factors overlap, and not all of them will apply in every

case, so this Court has "wide discretion as to which factors to apply and the relative weight to assign to each." *Xcel Energy*, 364 F. Supp. 2d at 993.

44.     The Arkansas Supreme Court has indicated that courts should consider the *Chrisco* factors in awarding attorneys' fees.[8] *Butt*, 351 Ark. 566, 98 S.W.3d 1 (citing *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990)).  A side-by-side of the *Chrisco* factors and the *Johnson* factors indicates how closely the two sets of factors parallel each other:

| The *Chrisco* Factors | | The *Johnson* Factors | |
|---|---|---|---|
| (1) | the experience and ability of the attorney | (9) | the experience, reputation, and ability of the attorneys |
| (2) | the time and labor required to perform the legal service properly | (1)  (3) | the time and labor required; and  the skill requisite to perform the legal service properly |
| (3) | the amount involved in the case and the results obtained | (8) | the amount involved and the results obtained |
| (4) | the novelty and difficulty of the issues involved | (2)  (10) | the novelty and difficulty of the questions; and  the undesirability of the case |
| (5) | the fee customarily charged in the locality for similar legal services | (5)  (12) | the customary fee for similar work in the community; and  awards in similar cases |
| (6) | whether the fee is fixed or contingent | (6) | whether the fee is fixed or contingent |
| (7) | the time limitations imposed upon the client or by the circumstances | (7) | time limitations imposed by the client or the circumstances |

---

[8]     The *Chrisco* factors are: "the experience and ability of the attorney"; (2) "the time and labor required to perform the legal service properly"; (3) "the amount involved in the case and the results obtained"; (4) "the novelty and difficulty of the issues involved"; (5) "the fee customarily charged in the locality for similar legal services"; (6) "whether the fee is fixed or contingent"; (7) "the time limitations imposed upon the client or by the circumstances"; and (8) "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718-19.  *Chrisco* was a non-class action breach of contract lawsuit.  Therefore, when the *Chrisco* factors are applied to a class action, not all factors are equally weighted or even applicable.  *See Powell*, 267 Ark. at 487, 592 S.W. 2d at 110.  This dynamic can be seen in the class action decisions of the federal courts that apply similar criteria.  *See, e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 993.

| The *Chrisco* Factors | | The *Johnson* Factors | |
|---|---|---|---|
| (8) | the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer | (4) | the preclusion of other employment by the attorney due to acceptance of the case |
| | | (11) | the nature and length of the professional relationship with the client |

45.     When the *Chrisco/Johnson* factors are applied to the percentage of the common fund, the analysis supports an award of attorneys' fees and costs in the amount requested by Class Counsel.  This Court is in the best position to weigh the factors.  *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) ("District courts have broad discretion in determining appropriate attorneys' fees following a class action settlement."); *Chrisco*, 304 Ark. at 230, 800 S.W.2d at 719 ("Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors.").

46.     Class Counsel address the *Chrisco/Johnson* factors below in view of their relative importance, as determined by Class Counsel, from most to least applicable.

**1.     The fee customarily charged in the locality for similar legal services**

47.     In class actions, the Court always approves the attorney fee award at its discretion, so Class Counsel does not *per se* customarily "charge" a fee for similar class actions.  However, the percentage awarded by other courts in similar class actions provides the best approach to analyzing this *Chrisco/Johnson* factor in the class action context.  In analyzing a class action such as this case, the "locality" component of this factor should be expanded to allow comparison to all class actions.  However, the attorneys' fees awarded in prior class actions in Arkansas are particularly instructive.

48.     The $2,833,333.33 in attorneys' fees sought—which represents 24% of the total monetary benefit achieved for the Class (approx. $11,757,954.06) and 33.33% of the amount to be paid to the Class ($8,500,000)—fall within the range of fees routinely awarded to class counsel in class actions.  Indeed, in the Eighth Circuit, "courts have routinely awarded attorney fees ranging from 25% to 36% of the common fund under the percentage-of-the-fund method."  *Yarrington*, 697 F. Supp. 2d at 1061 (awarding 33-1/3%) (*citing Xcel Energy*, 364 F. Supp. 2d at 998); *see also Shaw v. Toshiba America Info. Sys.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorney's fee awards (such as the NERA study), this court concludes that attorney's fees in the range from twenty-five percent (25%) to [33-1/3%] have been routinely awarded in class actions"); *Waters*, 190 F.3d at 1297-98 (11th Cir. 1999) (approving 30% benchmark); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.") (citing numerous cases); Denise Martin, *et al*, Nat'l Econ. Research Ass'n (NERA), RECENT TRENDS IV: WHAT EXPLAINS FILINGS AND SETTLEMENTS IN SHAREHOLDER CLASS ACTIONS? at 13 (1996) ("Regardless of case size, fees average approximately ***32 percent*** of the settlement.  This finding holds even for cases with settlements in excess of $50 million.") (emphasis added).[9]

---

[9]     In denying the plaintiff's motion to remand a similar labor depreciation case to state court, this Court noted that "[a] 40% rate of attorney's fees has been approved by the Court and others" and held that "it is reasonable to use a 40% multiplier to estimate attorney's fees for the amount in controversy."  *Doss v. Am. Family Home Ins. Co.*, 47 F. Supp. 3d 836, 843 (W.D. Ark. 2014) (Hickey, J.) (citing Western District of Arkansas decisions).  Other courts denying remand have reached the same conclusion, specifically, that it is reasonable to conclude that a court might award up to 40% as a fee in class litigation in Arkansas.  *See, e.g.*, *Knowles v. Standard Fire Ins. Co.*, 2013 WL 3968490, at *6 (W.D. Ark. Aug. 2, 2013) ("The Court finds that it is reasonable to use a 40% multiplier to estimate attorney's fees for the amount in controversy in this case.  The Arkansas Court of Appeals affirmed a 40% fee award in a case involving an insurer's wrongful refusal to pay policy proceeds.") (*citing Capital Life & Accident Ins. Co. v. Phelps*, 76 Ark. App.

## 2. The amount involved in the case and the results obtained

49.     The next *Chrisco/Johnson* factor—the amount involved and the results obtained—is entitled to particular weight when, as in this case, the efforts of counsel were instrumental in realizing a recovery on behalf of the class.  *See Powell*, 267 Ark. 484, 592 S.W. 2d 107; *In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127, 1129 (S.D. Tex. 1990) ("[t]he factors enumerated by *Johnson*, . . . emphasize 'the results obtained'"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained").

50.     The result achieved for the Class is substantial and meaningful.  As discussed above, the value of the common fund made available through the Settlement is approximately $11,757,954.06, which is significant in an absolute sense.  Moreover, obtaining between ***75% and 100%*** of the withheld labor depreciation in this action for all Class Members well exceeds the percentage recovered in the vast majority of class action settlements.  *See, e.g.*, *Ballard*, 349 Ark. at 581, 79 S.W.3d at 848 ("settlement of 3.2% to 3.7% of the potential recovery well within the ballpark") (citing federal court decisions); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 1986-1 Trade Cases 66,904 (D.D.C. 1985) at 61,618 ("The Settlement Agreement, which provides for recovery of approximately 50% of potential single damages over a seven year period by participating class members, is well above the range which many courts have approved as fair, reasonable and adequate [citations omitted].").

51.     Given the extraordinary relief obtained for the Class, the "results obtained" factor should be given great weight and justifies an award at or exceeding the benchmark.

---

428, 434-35, 66 S.W.3d 678, 682-83) (Ark. Ct. App. 2002)); *Basham v. Am. Nat. Cty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 890 (W.D. Ark. Oct. 23, 2013).

### 3.     The experience and ability of the attorneys

52.     Class Counsel are highly experienced in prosecuting class action, commercial, mass tort, securities and other complex litigation.  ¶ 16.  Class Counsel have taken on large corporations in contingent fee litigation, including cases resulting in class certification.  *See, e.g.*, *Dennington v. State Farm Fire and Cas. Co.*, 2016 WL 11596076 (W.D. Ark. Aug. 24, 2016) (Hickey, J.). Class Counsel's experience and ability qualify them to prosecute and negotiate a settlement of this action.

53.     This action clearly required legal skill and experience to bring it to such a successful conclusion.  The case required investigation of complex factual circumstances, the development of creative legal theories, and the skill to respond to a host of defenses.  In addition, State Farm was represented by prominent and well-respected law firms.  The standing of opposing counsel should be weighed in determining the fee because such standing reflects the challenge faced by Plaintiffs' attorneys.  *See Yarrington*, 697 F. Supp. 2d at 1063 (finding the fact that defendant's attorneys "consist[ing] of multiple well-respected and capable defense firms" which "consistently challenged Plaintiff throughout the litigation" supported class counsel's fee request); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976).  The ability of Class Counsel to obtain this substantial settlement for the Class in the face of such formidable legal opposition confirms the quality of Class Counsel's representation.  Accordingly, this factor also supports an award at or above the benchmark range.  *Shaw*, 91 F. Supp. 2d at 970.

### 4.     The novelty and difficulty of the issues involved

54.     The Court is in a superior position based on its oversight of the litigation to judge the novelty and difficulty of the issues involved. *Butt*, 351 Ark. at 584-85, 98 S.W. 3d at 11-12. Throughout the case, State Farm maintained that Plaintiffs' substantive and class allegations were without merit.  In short, the facts of the case, the legal issues involved, and the aggressive posture of State Farm in asserting its defenses presented a risk that Plaintiffs would fail to establish liability and/or legal damages.

55.     To illustrate this point, Class Counsel relies on the class certification briefing on file with the Court in this case.[10]  Following the Court's grant of class certification, State Farm appealed this Court's decision to the Eighth Circuit with a question of first impression for appellate courts under federal law—whether a class of insureds seeking relief for labor depreciation in breach of contract is certifiable under Rule 23.  When Class Counsel took this case at the outset, it was not at all clear that they would successfully certify a class of insureds on a labor depreciation theory.  Under the circumstances, there was plainly a risk that Plaintiffs would be unable to certify the Class, unable to establish liability and would recover nothing, or would be able to establish liability only after several additional years consumed by trial, post-trial motions and inevitable appeals.  Considering these risks, this litigation ranks at the upper end of the "novelty and difficulty" spectrum.  Thus, this factor supports an attorneys' fee and expense award at or above the benchmark.

### 5.     Whether the fee is fixed or contingent

56.     Class Counsel undertook this action on a contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the litigation would yield

---

[10]     *See* ECF Nos. 41, 50 and 56; *see also, e.g.*, *Green v. Am. Modern Home Ins. Co.*, No. 14-CV-4074, ECF Nos. 83, 87, and 104.

no recovery and leave them not only uncompensated, but losing all amounts invested in this case. Courts in the Eighth Circuit have consistently recognized that "the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Xcel Energy*, 364 F. Supp. 2d at 994; *see id.* at 994-95 ("The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003) ("The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action."); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

57.     Indeed, the risk of no recovery in complex cases of this type is very real and is heightened when plaintiff's counsel press to achieve the very best result for those they represent. There are numerous examples of class actions in which plaintiff's counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (Seventh Circuit affirmed district court's grant of summary judgment in favor of defendants); *In re Apple Comput. Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,252 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) (judgment for $145

million overturned after years of litigation and appeals), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973).

58.     It would not have been economically prudent or feasible if Class Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of hourly rates. The Arkansas Supreme Court recognized this when it stated:

> An important factor in our consideration of the fee allowance in this case is the realization that inadequate compensation will cause attorneys who are competent to handle this type of litigation to shun it, or if they accept it, fail to devote sufficient time to adequately prepare or present the case.

*Butt*, 351 Ark. at 580-81, 98 S.W. 3d at 9; *see also King Res.*, 420 F. Supp. at 631-32.  Even with the prospect of a percentage award, the risks involved and the total commitment required of Class Counsel made the incentive to take the case problematical at best.  The contingent nature of this action thus supports an award at or above the benchmark.

**6.     The time and labor required to perform the legal service properly**

59.     The primary goal of Class Counsel and the named Plaintiffs was to obtain by settlement or judgment the best overall common benefit for Class Members at the earliest reasonable time.  The reality of complex litigation against a well-represented defendant was an anticipated obstacle that Class Counsel considered and sought to overcome from the beginning. The results obtained by Class Counsel through the Settlement owe more to the strategy employed and quality of the work product than sheer time and labor.  The mere expenditure of time does not necessarily move a complex action such as this towards certification, judgment, or settlement. Class Counsel did not burden Class Members with unnecessary delay or wasted time.

60.     It has been noted that, in common fund cases, the time factor has been recognized as a less important factor because the primary focus is on the results achieved for class members. "While the time spent is an important element to be considered in determining the reasonable value

of an attorney's services, it is not the controlling factor and is sometimes a minor one." *Powell*, 267 Ark. at 487, 592 S.W. 2d at 109.  The Arkansas Supreme Court further stated:

> [O]ther factors were just as important as the time devoted to a case . . . the amount of the recovery . . . the ability of counsel, the nature and extent of the services rendered and the results obtained.

*Id.* at 267 Ark. at 487-88, 592 S.W. 2d at 109.  Indeed, in the normal case, to place a premium on the number of hours may serve only to penalize counsel who is able to achieve outstanding results with relative efficiency and to reward counsel who drags the litigation out to build up the number of hours, neither of which is a desirable goal.  *See Shaw*, 91 F. Supp. 2d at 963 ("Unlike in a statutory fee analysis, where the lodestar is generally determinative, in a percentage fee award [from a common fund] *the amount of time may not be considered at all*.") (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 24.121, at 191 (alterations in original); *In re Black Farmers Discrim. Litig.*, 953 F. Supp. 2d 82, 100 (D.D.C. 2013) (one purpose of the percentage method of awarding fees is to encourage early settlements by not penalizing efficient counsel).

61.    For these reasons, examination of the time factor should be given lessened consideration in the context of this class action and does not suggest either an upward or downward departure from the benchmark.  *Cf. In re Harrah's Entm't, Inc. Sec. Litig.*, 1998 WL 832574, at *5 (E.D. La. Nov. 25, 1998) ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained.  To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services").

**7.     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer**

62.     Although Class Counsel consists of highly experienced law firms, they do not have the manpower and economic resources of State Farm.   When Class Counsel undertakes major litigation such as this, it necessarily limits Class Counsel's ability to undertake other complex litigation.   ¶ 16.   During the course of this action, Class Counsel devoted significant resources to the litigation.   *Id.*   Class Counsel had to make this commitment at the outset without knowing how long the case would take or if it would ever resolve.   Thus, Class Counsel's willingness to prosecute the action on a contingent fee basis and willingness to advance costs diverted the manpower and resources expended on this action from other cases.   Therefore, to the extent applicable to class actions, this factor also warrants an attorneys' fee award at or above the benchmark range.

**8.     The time limitations imposed upon the client or by the circumstances**

63.     This factor has limited relevance in a class action setting.   There were no time limitations imposed upon the client by this litigation.   However, class members have an interest in obtaining a recovery as soon as possible.   Any delay in the resolution of the litigation impacts class members.   Therefore, the circumstances of a class action always impose a time limitation to resolve the litigation for the best possible recovery at the earliest possible point.   Because this time limitation is inherent to all class actions, this factor does not warrant either an upward or downward adjustment.   However, this dynamic inherent in class actions emphasizes why the time and labor factor should be afforded less weight.

**9.     Summary of *Chrisco/Johnson* factors**

64.     An analysis of the *Chrisco/Johnson* factors strongly supports Class Counsel's application for $2,833,333.33 in fees.   None of the factors suggest that the 25% to 33.33% starting

point of "similar awards" should be adjusted downward.  Rather, several of the factors support *increasing* the benchmark starting point.  The *Chrisco/Johnson* factors that support a higher percentage award include (a) the experience and ability of counsel, (b) the amount involved and results obtained, (c) the novelty and difficulty of the issues, and (d) the preclusion of other employment.  Class Counsel contends that the *Chrisco/Johnson* factors would support an award at or above the benchmark range.

## IV.   THE REACTION OF THE CLASS REPRESENTATIVE AND THE CLASS TO DATE CONFIRMS THAT THE REQUESTED FEE IS REASONABLE

65.    Plaintiffs Stuart and Hood, as representatives of the Class, have reviewed and approved Class Counsel's requests for fees and expenses.  *See* Ex. 2 (Stuart Declaration).  Plaintiffs believe Class Counsel's request is fair to both the named plaintiffs and the Class.  Additionally, Individual Notices have been mailed to Class Members.  ¶ 19.  The Notice advised Class Members that Class Counsel would apply for a collective fee and expense award of up to $3,257,954.06.  *Id.* To date, no objections have been submitted.  This lack of any objections is itself important evidence that the requested fees are fair.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request); *accord Xcel Energy*, 364 F. Supp. 2d at 996-98.

## V.   CLASS COUNSEL REQUEST THAT THE COURT GRANT INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES

66.    It is well settled that a class representative may be awarded an incentive award. *U.S. Bancorp*, 291 F.3d at 1038 (award of $2,000 to each of five representative plaintiffs was appropriate); *Allapatah Serv., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-22 (S.D. Fla. 2006) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).  The Eighth Circuit in *U.S. Bancorp* noted that the "relevant factors in deciding whether an incentive award to a named plaintiff is warranted include actions the plaintiff took to protect the class's interests, the degree to which

27

class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing litigation."  291 F.3d at 1038.

67.     State Farm does not object to $9,500 being awarded to each Plaintiff for his or her service as Class Representative.  This request is reasonable in light of the risks Plaintiffs assumed on behalf of the Class and the efforts they expended in representing the Class.  Plaintiffs agreed to press this unique case on behalf of hundreds of insureds, knowing that State Farm would dispute their claims and attempt to dispose of this case as a matter of law.  Moreover, Plaintiffs devoted time and effort representing the Class through discovery.  Further, Plaintiffs agreed to serve with full knowledge that there was a potential risk of financial detriment and demands on their time.  Finally, any amount awarded by this Court to Plaintiffs will not reduce any amounts available to the Class.  Thus, the requested incentive award is fair and reasonable.

## VI.     **CONCLUSION**

68.     Based upon the foregoing, Class Counsel respectfully request that this application be granted, that Class Counsel be awarded $3,257,954.06 in attorneys' fees and expenses, and the Class Representatives each be awarded $9,500 as an incentive award.


Dated:  April 17, 2020                        Respectfully submitted,


                                              /s/ *Matt Keil*_____
                                              MATT KEIL
                                              Arkansas Bar No. 86099
                                              JOHN C. GOODSON
                                              Arkansas Bar No. 90018
                                              **KEIL & GOODSON P.A.**
                                              406 Walnut Street
                                              Texarkana, Arkansas 71854
                                              Telephone: 870.772.4113
                                              Facsimile: 870.773.2967

MATTHEW L. MUSTOKOFF
Pennsylvania Bar No. 308563
RICHARD A. RUSSO, JR.
Pennsylvania Bar No. 204156
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: 610.667.7706
Facsimile: 610.667.7056

A.F. "TOM" THOMPSON, III
Arkansas Bar No. 77133
KENNETH P. "CASEY" CASTLEBERRY
Arkansas Bar No. 2003109
**MURPHY, THOMPSON, ARNOLD,**
**SKINNER & CASTLEBERRY**
555 East Main Street, Suite 200
Post Office Box 2595
Batesville, Arkansas 72503-2595
Telephone: 870.793.3821
Facsimile: 870.793.3815

RICHARD E. NORMAN
R. MARTIN WEBER, JR.
**CROWLEY NORMAN LLP**
Three Riverway, Suite 1775
Houston, Texas  77056
Telephone: 713.651.1771
Facsimile: 713.651.1775

**ATTORNEYS FOR PLAINTIFFS AND THE**
**CLASS**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.  As such, this pleading was served on all counsel who are deemed to have consented to electronic service.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by regular mail on this 17th day of April, 2020.

/s/ Matt Keil
MATT KEIL