**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

JAMES STUART and CAREDA L. HOOD,       )
individually and on behalf of all others       )
similarly situated,       )
        )
             Plaintiffs,       )
v.       )       No. 4:14-cv-04001
        )
STATE FARM FIRE & CASUALTY       )       Hon. Susan O. Hickey
COMPANY,       )
        )
             Defendant.       )

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN**
**SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Federal Rule of Civil Procedure 23(e), Defendant State Farm Fire and Casualty

Company ("State Farm") respectfully submits this Memorandum of Law in support of entry of a

final order approving the Class Action Stipulation of Settlement entered into by the parties on

December 10, 2019, Dkt. 245-1 (the "Stipulation" or "Settlement").[1]

## **INTRODUCTION**

Plaintiffs filed this class action more than six years ago, alleging that State Farm wrongfully

depreciated estimated labor costs when calculating actual cash value ("ACV") payments on

Arkansas-based structural damage claims. State Farm has denied any wrongdoing throughout this

litigation and continues to so maintain. Moreover, State Farm believes that it would have prevailed

on the merits had this case proceeded to trial.

---

[1] Unless otherwise indicated, capitalized terms used herein shall have the same meaning as in the
Stipulation of Settlement. The Representative Plaintiffs (James Stuart and Careda Hood) and Class
Members are collectively referred to herein as "Plaintiffs."

State Farm of course recognizes that on the very day this lawsuit was filed, the Arkansas Supreme Court held, in answering a certified question, that labor depreciation was impermissible in a insurance policy that did not define ACV. *Adams v. Cameron Mut. Ins. Co.*, 2013 Ark. 475, 7, 430 S.W.3d 675, 679 (2013). However, even applying then-applicable (and now superseded) Arkansas law disallowing labor depreciation,[2] the claims asserted by many Class Members would have failed on the merits.

For example, State Farm would have shown at trial that, for many Class Members, State Farm's initial estimate of ACV was overstated by more than the amount of any labor depreciation or that the policyholder was able to complete repairs in full for the amount of State Farm's ACV payment. State Farm's policy expressly caps the amount owed by State Farm for ACV where insureds choose to repair at no more than the cost of repair. In addition, State Farm would have shown at trial that many Class Members – including the Representative Plaintiffs – already received everything to which they were entitled under State Farm's policy (including any previously depreciated labor costs), through their subsequent recovery of the costs they incurred to complete repairs to their damaged property.

State Farm recognizes, however, the enormous litigation manageability difficulties and limitations upon its due process rights that it confronted in presenting its individual defenses at a class-wide trial. Determining whether or not the total amount of State Farm's ACV payment to any Class Member was sufficient notwithstanding labor depreciation would have required resolution of various individualized – and disputed – factual questions for each claim.

---

[2] Although, after *Adams*, the Arkansas Supreme Court held that even a policy expressly permitting labor depreciation was unenforceable, *Shelter Mut. Ins. Co. v. Goodner*, 2015 Ark. 460, 6, 477 S.W.3d 512, 516 (2015), that decision was superseded by statute in 2017. *See* ARK. CODE § 23-88-106(a)(2) (2017) (expressly permitting labor depreciation).

Additionally, whether any policyholder is even a member of the class certified herein also requires resolution of individualized factual issues.[3]

Moreover, in light of the uncertainties in any litigation (and class litigation in particular), State Farm has determined that the Settlement is in the best interests of its current and former Arkansas policyholders.  State Farm has succeeded in materially narrowing the class period, as the class no longer stretches back to November 2003, as Plaintiffs had originally asserted, but instead is confined to the period running from May 1, 2010 through December 6, 2013.  In addition, the Settlement provides a manageable process for policyholders who believe they have been underpaid for ACV to submit claims for potential payments under the Settlement and for State Farm to review and, when warranted, challenge those claims based on a review of claim file materials and the policyholder's responses to claim-specific questions regarding completed repairs and the costs incurred therefor.  No such manageable, individualized process could exist if this case were to proceed to a class trial.

State Farm submits that the Settlement is fair, reasonable and adequate, especially in view of the strength of State Farm's defenses and the predominating individualized issues related to both liability and damages that would have made a class trial unmanageable.  Moreover, as discussed further below, the full and successful implementation of the Notice Plan, the notification of appropriate state and federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, the lack of any objections by any of those officials, the absence of

---

[3] For example, detailed review and analysis of claim file materials is necessary to reliably determine whether a policyholder received an ACV payment with labor depreciation applied (as is necessary for class membership) or instead received an up-front payment of replacement cost benefits with no depreciation applied.

any objections by any Class Member or other interested persons, and the other fairness factors discussed below further demonstrate that the Settlement should be finally approved by the Court.

## BACKGROUND

### A.    Plaintiffs' Complaints and State Farm's Motions to Dismiss

Plaintiffs originally filed this action in state court over six years ago, alleging claims for breach of contract and unjust enrichment based on State Farm's practice of depreciating the cost of labor in estimating ACV using the replacement cost less depreciation formula. *See* Dkt. 1-1 at 3-15. State Farm removed the action to federal court, *see* Dkt. 1, and moved to dismiss three successive complaints filed by Plaintiffs based on the same underlying claims but adding an additional proposed class representative in each pleading. State Farm argued, among other things, that the first proposed class representative's claims were barred by a previous class action settlement, that the second class representative's claims were barred by the fact that he had been paid in full and therefore had not suffered any alleged injury from labor depreciation, and that the third class representative's claims, as well as those of other potential class members, were inadequately pled. *See* Dkts. 9, 43, 72.

This Court entered an order that granted in part and denied in part State Farm's third and final motion to dismiss. Dkt. 110. The claims of the original class representative were dismissed with prejudice based on the earlier class action settlement, and an additional State Farm entity who Plaintiffs also had sued (State Farm General Insurance Company) was dismissed from the case. *See id.* The Court allowed the claims of the remaining Representative Plaintiffs (James Stuart and Careda Hood) to proceed.

**B.    Class Certification, State Farm's Appeal, and Further Post-Appeal Proceedings**

Discovery regarding the Representative Plaintiffs' individual claims and the class certification prerequisites proceeded while State Farm's motions to dismiss were pending. The parties filed numerous motions, including related to discovery, class certification, and *Daubert* challenges. *E.g.*, Dkts. 82, 89, 91, 105, 107. On August 24, 2016, the Court entered orders denying the parties' respective *Daubert* motions and related motions to strike, and granting class certification. *See* Dkts. 140, 141, 142. Further proceedings were then stayed after the Eighth Circuit granted State Farm permission to appeal the Court's class certification order. *See* Dkt. 156. The Eighth Circuit affirmed this Court's class certification order, while modifying the class definition, and remanded the case back to this Court on February 5, 2019. Dkt. 159. Thereafter, the parties engaged in various disputes over class notice, discovery of absent class members, and other matters. *See, e.g.*, Dkt. 164, 168, 170, 212. In addition, Plaintiffs filed a motion for summary judgment. *See* Dkt. 224. Certain of these motions remained pending when the parties reached a settlement agreement, including the motion to take discovery of absent class members and the motion for summary judgment.

**C.    Summary of Proposed Class and Settlement**

The parties participated in a full-day settlement conference on November 5, 2019, mediated by Magistrate Judge Bryant, *see* Dkt. 240, which led to the Stipulation of Settlement, executed on December 10, 2019. *See* Dkt. 245-1. While the terms of the Settlement are set forth more fully in the Stipulation, the following summary of its key features demonstrates that it provides real and substantial benefits to the Class, while also (in State Farm's view) giving credence to the defenses State Farm has asserted throughout this litigation.

The Class as defined in the Settlement includes "all persons and entities that received 'actual cash value' payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred between May 1, 2010 and December 6, 2013, where the cost of labor was depreciated." Dkt. 245-1, Stipulation, ¶ 7.  Subject to State Farm's right to challenge or reduce settlement payments as outlined in the Stipulation and to the procedures attendant to such challenges, and based on certain calculations performed by Plaintiffs' expert, potential Class Members who submit an accurate and complete Claim Form within the Claim Period ("Claimants"), and are deemed eligible, will receive a default payment determined according the following groupings:

(a)  **Group A:**  Claimants from whom estimated labor depreciation was initially deducted and not subsequently recovered, and who did not complete repairs in full, will receive payment of 100% of the estimated unpaid labor depreciation, plus interest at 5.25% per annum.

(b)  **Group B:**  Claimants from whom estimated labor depreciation was initially deducted, and who either recovered partially the initially deducted labor depreciation and/or completed repairs in full, will receive a payment of 75% of the estimated unpaid labor depreciation, plus interest at 5.25% per annum.

(c)  **Group C:**  Claimants from whom estimated labor depreciation was initially deducted, and who subsequently recovered all depreciation, will receive a payment of 10% of the estimated labor depreciation initially withheld but later paid in full.

*Id.*, ¶ 31.

State Farm's right under the Stipulation to challenge or reduce the settlement payments otherwise provided for in these groupings is consistent with State Farm's position throughout these proceedings that many policyholders were fully compensated for their losses notwithstanding State Farm's alleged labor depreciation practices.  The Stipulation provides State Farm the right to

review, for *every* claim, its own claim file materials as well as the Claimant's answers to questions

on the required claim form regarding whether repairs were actually undertaken and the costs

incurred therefor – information that often is not contained within State Farm's records.   The

Stipulation authorizes State Farm to challenge and reduce the settlement payments described above

in the following manner based on its review:

> (a)     If State Farm determines that a Claimant never received an ACV payment
>          on which labor depreciation was applied, the Claimant is not a Class
>          Member and is not entitled to any payment under the Stipulation.
>
> (b)     If State Farm determines that a Claimant completed all repairs in full, then
>          State Farm may "move" the claim "into the appropriate group" set forth
>          above (*i.e.*, Group A, Group B, or Group C), and reduce the payment to the
>          Claimant accordingly.
>
> (c)     If State Farm determines that the Claimant is not a Class Member, including
>          because State Farm has already paid the Claimant the applicable limits
>          under the policy, then the Claimant is not entitled to any payment under the
>          Stipulation.
>
> (d)     If State Farm determines that the settlement amount (or a portion of it)
>          would exceed the applicable limits under a particular Claimant's policy,
>          then it can challenge the payment amount on that basis and reduce it
>          accordingly so that the applicable limits are not exhausted.

*See id.*, ¶ 32.

Under the Stipulation, State Farm has sixty (60) days after it receives all timely, properly

completed Claim Forms to present its challenges or reductions to Class Counsel.  Class Counsel

then has thirty (30) days thereafter to advise State Farm's Counsel of Class Counsel's position

with respect to each challenge or reduction.  *Id.*, ¶ 33.  If Class Counsel disputes any of State

Farm's challenges or reductions, then the dispute will be presented to the appointed Neutral

Evaluator.  *See id.*, ¶ 19.  The parties have agreed that attorney Frank Hamlin of Hamlin Dispute

Resolution, LLC, should serve as this Neutral Evaluator, subject to this Court's approval.  The

Claimant will also have an opportunity at that stage to submit additional information or a written

position statement to the Neutral Evaluator.  *See id.*, ¶ 33.  The Neutral Evaluator will then decide what amount will be paid to the Claimant under the Settlement, which decision will be final and not subject to further review.  *Id.*[4]

State Farm submits that the foregoing manageable processes and procedures could not have occurred had the case proceeded to trial as a class action, for it does not believe there is class-wide evidence available to adjudicate these liability, damages, and class membership issues for 10,000-plus potential Class Members, as required for a litigation class under Rule 23.

**D.     The Court's Preliminary Approval of the Settlement**

On December 16, 2019, the Court held a hearing on Plaintiffs' Agreed Motion for Preliminary Approval of Class Action Settlement (Dkt. 245, the "Agreed Motion for Preliminary Approval").  *See* Dkt. 249.   On January 3, 2020, the Court granted the Agreed Motion for Preliminary Approval, and approved the Stipulation "as fair, reasonable, adequate, and in the best interest of the Class Members."  Dkt. 250 (the "Preliminary Approval Order"), ¶ 34.  The Court also held that the plan for Class Notice specified in the Stipulation (Section VI) "constitute[s] reasonable and best practicable notice under the circumstances" (*id.*, ¶ 13), and "meets the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law" (*id.,* ¶ 17).  The Court further found that "[a]ll notices concerning the Proposed Settlement required by the Class Action Fairness Act of 2005 . . . have been sent."  *Id.*, ¶ 8.  The Court appointed JND Legal

---

[4] In their Motion for Attorneys' Fees and Costs Related to the Stipulation of Settlement and Request for Fee Award to Class Representatives ("Attorneys' Fees Motion"), Plaintiffs represent that "the amount to be paid to the Class" is $8,500,000.  Dkt. 253, Attorneys' Fees Motion, ¶ 4.  That asserted valuation assumes that every Class Member will submit a valid claim *and* that State Farm will not prevail on any of its challenges to those claims.  (Pursuant to the terms of the Settlement, State Farm takes no position regarding Plaintiffs' Attorneys' Fees Motion.)

Administration Co. ("JND Legal") to act as third-party administrator for the Proposed Settlement, and directed JND Legal to disseminate the Class Notice pursuant to that plan. *Id.,* ¶¶ 7, 10. Finally, the Court conditionally certified the previously certified litigation class for settlement purposes and scheduled a Final Approval Hearing for June 1, 2020. *Id.,* ¶¶ 3, 19.

<u>**ARGUMENT**</u>

**I.**   <u>**The Proposed Settlement Is Fair, Reasonable, and Adequate.**</u>

A district court may approve a class action settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, a district court should consider (1) "the merits of the plaintiff's case, weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). "A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, [j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (internal quotation marks and citation omitted). All of the factors set forth above support final approval of the Settlement in this case.

**A.**   **The Merits of the Claims and Defenses**

The most important consideration in determining whether a settlement is fair, adequate and reasonable is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* at 1150. Courts assess this factor by "evaluating the strengths of the class claims against the strengths of [the] defense," and by considering the relative uncertainty of

a litigated outcome against the relief provided in the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). This factor weighs strongly in favor of the Settlement in this case.

To prevail on the merits at trial on liability, Plaintiffs would need to prove that the amount State Farm paid them for ACV was insufficient – *i.e.*, that the actual cash value of their damaged property (the amount it would cost to repair or replace the property, less depreciation) was more than what State Farm paid them. *See J-McDaniel Constr. Co. v. Mid-Continent Cas. Co.,* 761 F.3d 916, 918 (8th Cir. 2014) (elements of breach of contract under Arkansas law include an obligation of the defendant under the contract and a violation of that obligation). Contrary to Plaintiffs' assertions, however, proving underpayment for ACV cannot be done solely based on State Farm's *estimates* of replacement cost. The formula for calculating ACV uses "replacement cost" as an input, but at the time State Farm pays ACV, it only has an estimate of those costs. *See* Dkt. 87 at 38-40. The *actual* replacement costs incurred by many Class Members will be different, and those differences directly impact the sufficiency of any ACV payments made by State Farm. *See id.*

Furthermore, because the ACV provision in State Farm's policy provides that the amount State Farm owes for ACV is "not to exceed the cost to repair or replace the damaged part of the property," Dkt. 87-2 at 19, Plaintiffs would need to prove at trial that State Farm's initial ACV payments to them did not exceed the costs they incurred to complete repairs. Stated differently, if a policyholder's "cost to repair or replace" was less than State Farm's ACV payment, then regardless of labor depreciation, that policyholder (i) cannot not establish a breach of the ACV provision; (ii) was not injured; and (iii) is owed no damages.[5]

---

[5] To be sure, policyholders are not obligated to complete repairs; they may choose to recover solely on an ACV basis. *See In re State Farm Fire & Cas. Co*., 872 F.3d 567, 575 (8th Cir. 2017). But if they do elect to proceed with repairs, then the costs they incur are critical to the liability analysis,

Thus, for every claim within the certified class, at least three facts would need to be established before it could be determined whether State Farm committed a breach of contract at the ACV stage and, if so, what damages would be owed: (1) the amount the policyholder received for ACV; (2) the correct measure of ACV (what it would cost to repair or replace the damaged property, less depreciation); and (3) the policyholder's cost (if any) to repair or replace the damaged property. Resolving each of these issues requires wholly individualized evidence and, as a result, is not amenable to proof on a class-wide basis.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court held that "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' . . . a class cannot be certified on the premise that [a defendant] will not be entitled to litigate" its defenses to individual claims. *Id*. at 367 (internal citations omitted). In recognition of State Farm's due process rights, the Court's class certification order contemplated unspecified "mechanisms" would be used to exclude class members upon proof that they did not sustain damages. *See* Dkt. 142 at 12. Because State Farm's records frequently do not contain the necessary documentation establishing whether a policyholder has completed any repairs, or the costs incurred for those repairs, State Farm sought targeted discovery of absent class members on these factual issues following the Eighth Circuit's decision. *See* Dkt. 170. Plaintiffs contested State Farm's right to such discovery, *see* Dkt. 177, and the Court had not yet ruled on the motion when the parties entered into the Settlement. State Farm respectfully submits that the discovery it sought would have amply shown that this case could not be tried on a class-wide basis because

---

regardless of whether they seek payment for ACV alone or later seek replacement cost benefits. In both situations, State Farm's policy expressly caps liability at the policyholder's "cost to repair." *See* Dkt. 87-2 at 19.

-11-

common evidence does not exist to establish either liability or damages.  As such, it would have supported decertification either before or after trial.

The Settlement avoids the need to pursue discovery of absent class members in order to adjudicate these individualized liability and damages issues, while at the same time preserving Plaintiffs' ability to resolve this case on a class-wide basis.  That is because a proposed class settlement need not satisfy the litigation manageability requirement under Federal Rule of Civil Procedure 23.  As the Supreme Court has explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The above discussion demonstrates that the barriers to a class-wide recovery in this case were significant given the fundamental issues of State Farm's liability to each potential Class Member and the damages (if any) owed to those persons.  The Settlement allows Class Members who believe they were injured to receive potential payments for claims that, in State Farm's view, could not have been appropriately tried on a class-wide basis.  In State Farm's view, that strongly supports final approval of the Settlement.

The Settlement also provides a vehicle for addressing the stark ascertainability issue that would otherwise exist were the case tried on a class-wide basis.  The Settlement itself recognizes the ascertainability problem here by providing that Class Notice will be sent *not* just to all Class Members but rather to "all *potential* Class Members." Dkt. 245-1, Stipulation, ¶ 48(b) (emphasis added).  Even Plaintiff's expert has acknowledged that the list of potential Class Members includes policyholders who fall outside of the Class definition.  *See* Dkt. 224-11 at 5, 9 (filed under seal).  Moreover, as previously discussed, State Farm retains the right to challenge the right of each

*potential* Class Member who submits a Claim Form to any recovery under the Settlement on the basis (among others) that he or she is "is not a Class Member." Dkt. 245-1, Stipulation, ¶ 32. Whether a potential Class Member truly meets the class definition or falls within the class exclusions requires individualized fact-finding and analysis.  The Settlement avoids this obstacle as well, for the individualized review procedures contemplated for *each* claim under the Settlement could not be accomplished at a class-wide trial – but do not preclude approval of a class settlement. *See Amchem Prods.*, 521 U.S. at 620.

### B.    The Defendant's Financial Condition

The second fairness factor also supports approval of the Settlement.  *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975) (in deciding whether to approve settlement, courts should consider "the defendant's overall financial condition and ability to pay").   In particular, "[t]here is no indication that [State Farm's] financial condition would prevent it from raising the settlement amount."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933.

### C.    Complexity and Expense of Further Litigation

The third fairness factor – the complexity, expense, and likely duration of the litigation – also weighs in favor of approval.  State Farm's strong defenses discussed above mean that a trial of Plaintiffs' claims would be lengthy and complex, effectively involving many minitrials, if not decertification of the class.  The parties had yet to complete discovery in this case (including absent class member discovery sought by State Farm), much less the inevitable appeals that would have been necessary following trial, regardless of which party prevailed.  Thus, "barring settlement," there is a real risk that "this case would likely drag on for years, require the expenditure of [substantial] dollars, all the while class members would receive nothing."  *Id.* (internal quotation marks omitted).

Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt and real recovery for eligible Class Members.  There is no doubt that the time and expense of continuing the litigation would be substantial, and that such transactional costs could significantly reduce whatever judgment, if any, Plaintiffs could recover through litigation.  Approval under this factor is favored where, as here, significant procedural hurdles remained, including *Daubert* motions and appeals.  *See Keil v. Lopez,* 862 F.3d 685, 698 (8th Cir. 2017) (noting that, absent settlement, "[c]lass certification, expert discovery, and summary judgment motions are just a few of the matters that would ensue, in addition to a trial and possible appeals," and that "[a]dditional work may also include pre-trial motions, post-trial motions, and thousands more hours of attorney time").  Avoiding such expenditures of resources and time will benefit all parties and the Court.

### D.     The Absence of Opposition to Settlement

Lastly, the views of Class Members and other interested parties must be considered.  Following this Court's approval of the plan for Class Notice, JND Legal successfully implemented that plan.  *See infra* at 15-16.  In addition, JND Legal successfully sent universal CAFA notice to every potentially interested regulator, including the state attorneys general for all 50 states, the insurance commissioners for all 50 states and all U.S. territories, the U.S. Attorney General, and the Chairman of the Federal Reserve Bank.  Not one person nor any interested regulator – including the Arkansas Insurance Commissioner – objected to the settlement, and the settlement administrator received only 9 requests for exclusion, less than 0.1% of the persons who received the mailed Class Notice.  *See infra* at 16.  "The fact that only a handful of class members object[] to the settlement similarly weighs in its favor."  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).  Here, there were zero objections.  "The district court has a duty to the silent majority as well as the vocal minority."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396

F.3d at 933.  The overall favorable response to the proposed Settlement here strongly supports final approval.

### E.      Lack of Collusion

Although *Van Horn* does not mention it, many courts, including in the Eighth Circuit, examine whether the class settlement was arrived at as a result of collusion between the class counsel and the defendant.  *See, e.g.*, *Petrovic,* 200 F.3d at 1145-46 (settlements may be subject to greater scrutiny in "a situation in which the parties agreed upon a class definition and a settlement before formally initiating litigation, and then presented the district court with the complaint, proposed class, and proposed settlement").  Here, the Settlement was reached after years of litigation and after a full-day mediation overseen by Magistrate Judge Bryant.  While the parties have worked collaboratively to document the Settlement and present it to the Court, all litigation and negotiation took place at arm's length and in an adversarial manner.  In short, the parties engaged in a bona fide dispute that was contested, litigated, and ultimately settled as a result of arms-length negotiations.

## II.     Adequate Notice Has Been Provided to the Class and to the Appropriate State and Federal Officials.

### A.      The Notice Plan Has Been Fully and Successfully Implemented.

The Court-approved Class Notice plan has now been fully implemented by the parties and the Administrator, JND Legal.  As set forth in more detail in the affidavit filed by JND Legal (*see* Dkt. 256-2):

- JND Legal ran the list of potential Class Members' addresses (provided by State Farm) through the National Change of Address database, and updated the addresses in the Class list accordingly.  *Id.*, ¶ 9.

- On January 31, 2020, JND Legal mailed nearly 18,000 Class Notices, via U.S. Mail postage paid, to potential Class Members or their nominees.  (As of May 22, 2020, 843 of the mailed Notices were returned as undeliverable; 115 of these were returned with a forwarding address from the United States Postal Service.  JND

Legal re-sent these Notices to the new addresses indicated, and updated the addresses in the Class list accordingly.  The addresses for the remaining returned Notices (i.e., those returned without a forwarding address) were traced, and an additional 230 Notices were mailed to updated addresses, with JND Legal updating the Class list accordingly.)  *Id.*, ¶¶ 10-11.

- JND Legal established, and continues to maintain, a toll-free number with an automated system providing information about the Stipulation, with the ability to request copies of the long-form notice or the Stipulation and to speak with a live customer service representative.  As of May 22, 2020, there have been 688 calls to JND Legal's toll free number.  *Id.*, ¶¶ 16-17.

- JND Legal established, and continues to maintain, a settlement website with a copy of material documents related to the litigation and the proposed Settlement (including but not limited to the Stipulation and the long-form notice), a series of Frequently Asked Questions and Answers regarding the Settlement, contact information for Class Counsel and for JND Legal, key dates for the submission of Claim Forms, exclusion requests, and opt-out requests, and information regarding the details of the final approval hearing.  As of May 22, 2020, the settlement website has tracked 1,089 unique users who registered 5,301 page views.  *Id.*, ¶¶ 14-15.

- JND published the Court-approved Publication Notice twice, on February 2, 2020 and April 12, 2020, in the Sunday edition of the Arkansas Democrat-Gazette.  *Id.*, ¶ 13.

- JND mailed a Postcard Reminder Notice on May 15, 2020 to approximately 16,000 potential Class Members who had been sent initial notice but had not yet submitted a claim. *Id.*, ¶ 12.

- Under the Stipulation, any Class Member could have obtained exclusion from the Class by mailing an opt out request no later than thirty (30) days prior to the Final Approval Hearing ("the Opt Out Period").  *See* Dkt. 245-1, Stipulation, ¶¶ 47(j), 61. The same deadline existed for objections, which either needed to be filed with the Court or postmarked by May 2, 2020.  The deadline for objections and opt-outs has now passed.  As of May 22, 2020, JND Legal has received just 9 requests for exclusion (comprised of 15 individual Class Members) and has received zero objections.  Dkt. 256-2, ¶¶ 18-21.

## B.   The Form of the Notice Was More Than Sufficient

The information provided to the Class Members in the Class Notice must be structured "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known."  *Reynolds v. Nat'l Football League*, 584 F.2d 280, 285 (8th Cir.1978).  Under *Reynolds*, the notice of settlement must be sufficiently

detailed to permit class members to determine the potential costs and benefits involved, or at least whether additional investigation into the matter would be an efficient use of their time. *Id.* The mailed notice does not need to contain a formula for calculating individual awards. *Petrovic*, 200 F.3d at 1153 ("It is well settled that the notice 'is not required to provide a complete source of information.'") (citations omitted).

This standard has more than been satisfied here. The Notice form in this case described with sufficient particularity the stakes involved, the settlement of claims against State Farm, the process by which potential Class Members could seek payment under the Settlement, the potential payments State Farm had agreed to make under the Settlement, and the process by which potential Class Members could seek to exclude themselves from the Settlement or object to it. The Notice also provided contact information for Class Counsel and JND Legal, and provided the address for the class settlement website, www.Stuart-v-StateFarm.com.

**C.     Sufficient Notice of the Settlement Has Been Given to the Appropriate Federal and State Officials as Required Under CAFA.**

CAFA requires that notice of all federal class action settlements be sent to the appropriate state and federal officials as a condition to obtaining court approval of the settlement. *See* 28 U.S.C. § 1715. CAFA further requires that the notice provided include either the names of class members who reside in the state "if feasible," or if not feasible "a reasonable estimate of the number of class members residing" in the state. *Id.* at § 1715(b)(7)(A)-(B). In non-banking cases, the "appropriate federal official" is the Attorney General of the United States. *See id.* at § 1715(a)(1)(A). Notice must also be sent to the "appropriate State official of each State in which a class member resides." *Id.* at § 1715(b). The "appropriate State official" is

> the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the state, if some or all of the matters alleged in the class action are subject to regulation by that person.

*Id.* at § 1715(a)(2).

In this case, the Arkansas Department of Insurance is the entity with the primary regulatory authority over State Farm in Arkansas.  In addition, given that potential Class Members likely reside in other states, CAFA notice was sent to the U.S. Attorney General, the state attorney general for all 50 states, the insurance commissioner for all 50 states and all U.S. territories, and, in an abundance of caution, to the Chairman of the Federal Reserve Bank.  *See* Dkt. 256-2 at Ex. A. Accordingly, notification to appropriate federal and state officials has been given in accordance with CAFA.

Moreover, no recipient of the CAFA notice has objected or otherwise expressed any reservations to the proposed Settlement.

## **CONCLUSION**

For the foregoing reasons, the proposed Settlement represents a fair, reasonable, and adequate settlement of the claims in this suit.  Accordingly, State Farm respectfully requests that the Court issue an Order granting final approval of the Stipulation of Settlement and entering Final Judgment in this case.

Dated:  May 22, 2020                                        Respectfully submitted,

/s/ *Jacob L. Kahn*

John E. Moore
Beverly A. Rowlett
MUNSON, ROWLETT, MOORE & BOONE, P.A.
Regions Center
400 West Capitol Avenue, Suite 1900
Little Rock, AR 72201
(501) 374-6535

Joseph A. Cancila, Jr. (*pro hac vice*)
Jacob L. Kahn (*pro hac vice*)
Lynn D. Moffa (*pro hac vice*)
Allison N. Siebeneck (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP

70 W. Madison St., Suite 2900
Chicago, IL 60602
(312) 471-8700

*Attorneys for Defendant State Farm*
*Fire and Casualty Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

parties of record.

Dated: May 22, 2020                                     */s/ Jacob L. Kahn*